833 So.2d 693 (2002)
Linroy BOTTOSON, Petitioner,
v.
Michael W. MOORE, etc., Respondent.
No. SC02-1455.
Supreme Court of Florida.
October 24, 2002.
*694 William Jennings, Capital Collateral Regional CounselMiddle Region, Peter Cannon, Assistant CCRC, and Eric Pinkard, Assistant CCRC, and Elizabeth A. Williams, Staff AttorneyMiddle Region, Tampa, Florida; Mark E. Olive of Law Offices of Mark E. Olive, P.A., Tallahassee, Florida; and Timothy K. Ford of MacDonald, Hoague & Bayless, Seattle, WA, for Petitioner.
Robert A. Butterworth, Attorney General, Kenneth S. Nunnelley, Senior Assistant Attorney General, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, FL, for Respondent.
Nancy Daniels, Public Defender, Second Judicial Circuit, and President-elect, The Florida Public Defender Association, Inc., Tallahassee, FL; Bennett H. Brummer, Public Defender, and Christina A. Spaulding, Assistant Public Defender, Eleventh Judicial Circuit, Miami, Florida; Carey Haughwout, Public Defender, and Gary Caldwell, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, FL; and Robert Wesley, Public Defender, and George Allen Couture, Assistant Public Defender, Ninth Judicial Circuit, Orlando, FL, for The Florida Public Defender Association, Inc., Amicus Curiae.
Robert Augustus Harper, Jr. of Robert Augustus Harper Law Firm, P.A., Tallahassee, FL; and James T. Miller, Chair, Amicus Committee, FACDL, Jacksonville, FL, for Florida Association of Criminal Defense Lawyers, Amicus Curiae.
Charles T. Canady, General Counsel, and Wendy W. Berger, Assistant General Counsel, Tallahassee, FL, for Honorable Jeb Bush, Governor of the State of Florida; and Arthur I. Jacobs, General Counsel, Fernandino Beach, FL, and Raymond L. Marky, Assistant State Attorney, Second Judicial Circuit, Tallahassee, FL, for Florida Prosecuting Attorney Association, Amicus Curiae.
PER CURIAM.
Linroy Bottoson, a prisoner under sentence of death and an active death warrant, petitions this Court for a writ of habeas corpus.[1] He seeks relief pursuant to Ring v. Arizona, 536 U.S. 584, ___, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002), wherein the United States Supreme Court held unconstitutional the Arizona capital sentencing statute "to the extent that it *695 allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty."
Although Bottoson contends that he is entitled to relief under Ring, we decline to so hold. The United States Supreme Court in February 2002 stayed Bottoson's execution and placed the present case in abeyance while it decided Ring.[2] That Court then in June 2002 issued its decision in Ring, summarily denied Bottoson's petition for certiorari, and lifted the stay without mentioning Ring in the Bottoson order.[3] The Court did not direct the Florida Supreme Court to reconsider Bottoson in light of Ring.
Significantly, the United States Supreme Court repeatedly has reviewed and upheld Florida's capital sentencing statute over the past quarter of a century,[4] and although Bottoson contends that there now are areas of "irreconcilable conflict" in that precedent, the Court in Ring did not address this issue. In a comparable situation, the United States Supreme Court held:
If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [other courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.
Rodriguez de Quijas v. Shearson/American Express, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).
We also reject Bottoson's claim that his rights under Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), were violated. We find Atkins inapplicable in light of the fact that Bottoson already was afforded a hearing on the issue of mental retardation and was permitted to introduce expert testimony on the issue. The evidence did not support his claim. See Bottoson v. State, 813 So.2d 31, 33-34 (Fla.), cert. denied, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 844 (2002).
Accordingly, we deny Bottoson's petition for habeas relief. This Court's stay of execution shall terminate at 5 p.m. on the thirtieth day following the filing of this opinion. No motion for rehearing will be allowed.
It is so ordered.
WELLS and QUINCE, JJ., and HARDING, Senior Justice, concur.
HARDING, Senior Justice, concurs with an opinion.
WELLS and QUINCE, JJ., concur specially with opinions.
ANSTEAD, C.J., and SHAW, PARIENTE and LEWIS, JJ., concur in result only with opinions.
HARDING, Senior Justice, concurring.
I concur with the opinion in denying relief to the petitioner for the reasons stated in the opinion. That having been done, I do not think there is more for this Court to say. I would leave the arguments on issues that are not dispositive to the resolution of this case to the lawyers who frame the issues by their briefs and *696 argue for their resolution in a reviewing court.
WELLS, J., concurring specially.
I concur with the opinion and decision to deny relief in this case and in King v. Moore, 831 So.2d 143 (Fla.2002). I write specially to state that my opinion remains the same as it was on July 8, 2002, when this Court entered the stays of execution in this case and in King. At the time those orders were entered, I dissented to the granting of the stays and stated:
I find no legal basis to stay the execution in this case. We have finally adjudicated this case. No United States constitutional law applicable to the Florida capital sentencing statute has been held by the Supreme Court of the United States to have changed. To the contrary, the Supreme Court has removed any obstacle for this execution to occur. We are bound by their application of federal constitutional law.
Bottoson v. Moore, 824 So.2d 115, 122 (Fla. 2002) (Wells, J., dissenting). The extensive cases which I set forth in my dissenting opinion continue to control this Court's decision in the instant cases because the cited United States Supreme Court decisions are directly ruling on Florida's capital sentencing statute.
I also write separately to state my disagreement with much of the analysis in Chief Justice Anstead's concurring in result only opinion in Bottoson[5] and with the analysis in Justice Pariente's concurring in result only opinions in King and in this case. King, of course, deals with the very same issues concerning Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which are the subject of this case.[6] I also do not agree with Justice Shaw that Florida's aggravating factors are the functional equivalent of elements of a greater offense. Reaching that conclusion would overrule United States Supreme Court precedent. See Hildwin v. Florida, 490 U.S. 638, 640, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) ("[T]he existence of an aggravating factor here is not an element of the offense but instead is `a sentencing factor that comes into play only after the defendant has been found guilty.'" (quoting McMillan v. Pennsylvania, 477 U.S. 79, 93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986))).
I specifically disagree with much of what is written in the various concurring opinions regarding the operation of Florida's capital sentencing statute. I do not believe that these individual explanations, which are hypothetical as to how Florida's capital sentencing statute is applied, are necessary or even helpful. Such explanations *697 are incomplete and are inherently written with the writer's philosophic spin on how Florida's capital sentencing statute is applied. The operation of Florida's statute is best explained by reviewing the twenty-six years of precedent from this Court and from the United States Supreme Court that has actually applied Florida's statute to a variety of distinct factual circumstances.
The twenty-six years of precedent directly analyzing and applying Florida's capital sentencing statute include United States Supreme Court decisions thoroughly and accurately analyzing the operation of Florida's statute. Some of those analyses, but not an exhaustive list, include Proffitt v. Florida, 428 U.S. 242, 251-60, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); Harris v. Alabama, 513 U.S. 504, 518, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995); Lambrix v. Singletary, 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); and Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In particular, the Court's opinion in Lambrix contains a detailed analysis of Florida's capital sentencing statute and its jurisprudential history.
I believe that this Court's responsibility is to recognize the plain history of what has occurred in these cases. That history is:
1. In this Court's January 2002 opinions, issued after King and Bottoson were scheduled to be executed, this Court specifically denied King and Bottoson's Apprendi[7] claims.
2. On January 23, 2002, the United States Supreme Court stayed King's execution and, on February 5, 2002, stayed Bottoson's execution with statements that the stays would terminate automatically if certiorari was not granted.
3. On June 24, 2002, the United States Supreme Court issued its decision in Ring v. Arizona.
4. On June 28, 2002, the United States Supreme Court denied certiorari in King and Bottoson's cases, which automatically terminated the stays and allowed the executions to go forward.[8]
To reach the conclusion that Ring somehow undermines Florida's capital sentencing scheme as it was applied to King or Bottoson, it is necessary to conclude that the United States Supreme Court made the decision to terminate the King and Bottoson stays of execution even though Ring rendered Florida's statute unconstitutional as it had been applied to King and Bottoson. I cannot conclude that the United States Supreme Court would have permitted King and Bottoson to be executed if that court determined that Ring invalidated the death sentences imposed in these cases. The United States Supreme *698 Court, which had entered the stays in January 2002 after all appeals in this Court had been exhausted, knew the effect of its termination of its stays was to remove any federal court barrier to the executions, which could then be rescheduled and carried out. I conclude that it must logically follow that if the United States Supreme Court had concluded that Florida's capital sentencing statute was rendered unconstitutional as applied to King and Bottoson for the reasons stated in Ring, it would have granted certiorari and remanded King and Bottoson to this Court for further consideration in light of Ring v. Arizona.
Importantly, Florida's capital sentencing statute has been thoroughly and repeatedly examined by the United States Supreme Court over the past twenty-six years. Over this twenty-six-year period, Florida's citizens and Florida's judiciary have relied in good faith upon these decisions of the United States Supreme Court. Cf. Moragne v. States Marine Lines, Inc., 398 U.S. 375, 401, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) (stating that a basic reason for stare decisis is maintaining public faith in the judiciary). The State has sentenced individuals to death, confined individuals in a severe and special state of confinement with limited privileges, and executed fifty-three individuals in reliance on the constitutionality of Florida's capital sentencing statute as determined by the decisions of the United States Supreme Court. I cannot agree with the concurring opinions in this case and King which contend that the Court's ruling in Ring suddenly undermines the twenty-six years of judicial precedent which has been applied to these cases.
At the time this opinion is released, Florida has 369 individuals confined in special confinement on death row. Over one hundred of these individuals have been so confined for in excess of fifteen years. A list of those confined on death row begins with an individual who was received on death row on April 11, 1974. King committed the murder for which he has been sentenced to death in 1977, and Bottoson committed the murder for which he has been sentenced to death in 1979. King has been held on Florida's death row for more than twenty-four years and Bottoson for more than twenty. During that time, King and Bottoson's death sentences have been upheld based upon and in reliance on the decisions of both the United States Supreme Court and this Court upholding the constitutionality of Florida's capital sentencing statute.
The extreme length of time that Florida inmates have been kept on death row has been due in substantial part to shifting constitutional analysis of death penalty statutes in the 1980s, and in substantial part to issues related to the competent representation of defendants in trials and the representation of defendants in postconviction proceedings. In the 1990s, the jurisprudence related to the death penalty statutes stabilized. In Florida, beginning in the mid-1990s, this State made real progress in ensuring that procedural safeguards were extended to alleviate other concerns. For example, in cooperation with the Florida Legislature, this Court ensured that every inmate on Florida's death row has postconviction counsel paid for by the State of Florida. With this representation there are procedures in place for effective postconviction review of the reliability of a defendant's trial and sentencing proceedings.
Extending Ring so as to render Florida's capital sentencing statute unconstitutional as applied to either King or Bottoson would have a catastrophic effect on the administration of justice in Florida and would seriously undermine our citizens' *699 faith in Florida's judicial system. If Florida's capital sentencing statute is held unconstitutional based upon a change in the law applicable to these cases, all of the individuals on Florida's death row will have a new basis for challenging the validity of their sentences on issues which have previously been examined and ruled upon. These challenges could possibly result in entitlements to entire repeats of penalty phase trials, in turn leading to repeats of postconviction proceedings, and then new federal habeas proceedings. Evidence will clearly have grown stale or have been lost or destroyed, witnesses will be unavailable, and memories will surely have faded. Importantly, all of those involved in these human tragedies will have to relive horrid experiences in order to reestablish the factual bases of these cases, many which are undeniably heinous.
Finally, I renew my statements from my dissent in the July 8, 2002, orders granting the stays regarding my concern about what is occurring in our trial courts while the executions in these cases are stayed. Contrary to the speculative suggestions of Justice Pariente and Justice Shaw for fixing Florida's constitutionally approved capital sentencing procedure, it is my belief that what our trial courts are to do is to follow the United States Supreme Court's precedent regarding the Florida statutes, this Court's existing precedent, and the Florida statutes.
QUINCE, J., specially concurring.
I agree with the majority's determination that the Court's decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), does not apply to Bottoson's case because the trial court found he was not mentally retarded.
I write to stress that simply put, the other issue that is before this Court is whether the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which has made Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applicable in the death penalty context, makes the Florida capital sentencing scheme unconstitutional. That question must be answered in the negative based on the numerous decisions[9] from the Supreme Court that have addressed with approval, under both the Sixth and Eighth Amendments, Florida's death penalty statute. As others have pointed out the Supreme Court has reserved for itself the prerogative of overruling cases which are directly controlling on a particular issue. See Agostini v. Felton, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Because the Supreme Court did not explicitly overrule these decisions holding the Florida capital punishment scheme constitutional, I would deny Bottoson relief. Moreover, I would deny relief to Bottoson specifically because these issues were argued and addressed in prior pleadings before this Court and the United States Supreme Court. Thus, the issues are now procedurally barred. See Mann v. Moore, 794 So.2d 595 (Fla.2001); cert. denied, ___ U.S. ___, 122 S.Ct. 2669, 153 L.Ed.2d 843 (2002); Parker v. Dugger, 550 So.2d 459 (Fla.1989).
However, I also write to address the issues involving the maximum sentence for *700 a capital offense, the jury override, and the standard jury instructions which have been raised in some of the concurring opinions.
First, the Supreme Court in Apprendi, in reviewing sentencing in the noncapital context, announced the rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. The Court in Apprendi indicated that the capital cases cited by the parties were not controlling because those cases did not allow the judge to make the determination as to whether or not the defendant was guilty of a capital crime. More specifically, the Court said that only after the jury has found the defendant guilty of all the elements that make the case a capital crime, carrying with it a maximum sentence of death, can the judge then make a determination of whether the maximum sentence should be imposed. It was with this backdrop that we decided Mills v. Moore, 786 So.2d 532 (Fla.2001), and found that the Apprendi decision did not render Florida's capital sentencing scheme infirm. In so holding we indicated that Apprendi did not overrule the Court's previous decision in Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).
In Ring, however, the Supreme Court made it clear that Apprendi considerations are applicable to capital cases and declared the Arizona capital sentencing scheme a violation of the defendant's Sixth Amendment right to trial by jury. This finding of unconstitutionality was based on the fact that under the Arizona scheme a defendant is sentenced to death by the trial judge with no input by the jury once the determination of first-degree murder has been made. In reaching this conclusion the Court said it was receding from its Walton decision "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." 536 U.S. at ___, 122 S.Ct. at 2443. This language alone distinguishes the Florida death penalty scheme from the Arizona scheme because the sentencing judge in Florida does not sit alone when the decision concerning aggravating circumstances is made. Indeed, the jury hears the evidence presented by the prosecutor, is instructed on the aggravating circumstances, and renders an advisory sentence based on the evidence and the instructions. Thus, that finite holding in Ring does not affect the capital sentencing provisions in Florida.
Moreover, in rendering its decision in Ring, the Court also indicated that the maximum sentence for first-degree murder under the Arizona statute is life imprisonment. In so finding, it has been suggested that the Court has carved out a new meaning for the term "statutory maximum." The term statutory maximum has traditionally referred to that sentence which a state legislature or Congress has determined to be the outer limit of what can be imposed for a particular crime. For example, under Florida law felony offenses are classified into five groups: capital felony; life felony; felony of the first degree; felony of the second degree; and felony of the third degree. See § 775.081(1), Fla. Stat. (2001). The Legislature has also outlined under sections 775.082(1) and (3), Florida Statutes (2001), the maximum sentence that can be imposed upon conviction for each class of felony.[10] Thus, upon conviction *701 for a particular felony the defendant is exposed to that maximum sentence.
However, in no instance, whether a capital felony or a third-degree felony, can the trial court immediately impose that maximum sentence. In any noncapital situation, before a sentence is imposed, the trial judge must comply with the requirements of the sentencing guidelines as codified in sections 921.001-921.005, Florida Statutes (2001). And in a capital case, the trial judge must follow the sentencing procedures outlined in section 921.141, Florida Statutes (2001). Thus, in both capital and noncapital cases there is a separate sentencing proceeding after the verdict of guilty. The fact that there is a separate sentencing proceeding does not negate the fact that the Legislature has delineated a statutory maximum sentence which cannot be exceeded without proceeding beyond what is provided for under chapter 921.[11]
Such other proceedings may involve use of one or more of the enhancement statutes. The most notable of these statutes involve career criminals. See § 775.084, Fla. Stat. (2001). However, there are other statutes which allow the courts to reclassify the offense and thus exceed the statutory maximum sentence: section 775.0845, Florida Statutes (2001), wearing a mask during the commission of a crime; section 775.085, Florida Statutes (2001), hate crimes; section 775.087, Florida Statutes (2001), possession of a weapon during the commission of a crime; and section 775.0875, Florida Statutes (2001), use of a firearm taken from a law enforcement officer. It is these types of enhancements of the original offense which the Supreme Court addressed in Apprendi.[12] It is these types of enhancements that the Apprendi court said should be submitted to the jury before the court should impose a sentence that exceeded the original statutory maximum.
The Ring decision appears to have expanded that portion of its Apprendi holding. By referring to the sentence that a defendant may receive based on the jury verdict only,[13] the Court seems to have turned the concept of statutory maximum on its head. However, even with that being the case, I still believe that the basic premise of Ring has been fulfilled under the Florida statute. That is, the trial judge does not make the sentencing decision alone. The jury in Florida is involved not only in making the decision concerning innocence or guilt but is involved also in the decision concerning life or death.
Second, the issue of whether the Ring decision has changed Florida law which allows the trial judge to override a jury's recommendation of life imprisonment is not properly before this Court in this case. *702 After Bottoson's conviction of first-degree murder, the jury heard evidence concerning the appropriate sentence and recommended a sentence of death. This case is not the appropriate vehicle to raise the multiple concerns involving a jury override which may result from the Ring decision. Whether there is an inescapable conflict between Ring and the Supreme Court's prior decision in Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), cannot be resolved on this record. Any discussion of these matters at this point is sheer speculation by this Court and made without the benefit of input by the affected parties. Whether we may fundamentally agree that jury overrides may not be allowed under a full Ring analysis is not the issue here. What we must focus on at this point are the issues presented by the parties to this particular action.
Third, I believe this case squarely presents several issues concerning Florida's standard jury instructions for capital cases, that is, whether the jury must make specific findings of aggravating circumstances. While it may be a good idea to give the jury special interrogatories at the penalty phase, the question that is presented is whether such interrogatories are constitutionally required based on Ring. This issue was directly addressed and decided by the Supreme Court in Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989). In Hildwin, the issue before the Court was whether the Sixth Amendment requires the jury to specify the aggravating circumstance(s) it has found in recommending a sentence of death. This question was answered in the negative. There is no indication in Ring that Hildwin is no longer good law. Indeed, the Supreme Court did not elaborate on its determination that the sentencing decision could not be made by the trial judge sitting alone.
We can agree that, unlike Arizona, under Florida law the penalty phase of a capital proceeding takes place with both the judge and jury, the cosentencer,[14] sitting together. The prosecutor presents and argues those statutory aggravating circumstances he believes are supported by the facts of the case. The defense then presents such mitigating evidence as the facts of the case and the defendant's life circumstances may warrant. After all the evidence has been presented the jury then recommends life imprisonment or the maximum punishment of death. As with most guilt phase verdicts, the jury is not asked to specify its findings; it simply makes a determination of one sentence or the other without giving its reasoning. Nothing in the constitutional jurisprudence of criminal cases at this juncture requires more from the jury.
In this case, the jury returned a recommendation of death for the first-degree murder of a postmistress in Orange County, Florida. The jury was instructed that in order to recommend a sentence of death it must find that aggravating circumstances exist and that the aggravating circumstances found to exist must outweigh any mitigating circumstances. The jury was also instructed on the aggravating circumstances presented and argued by the prosecutor and the mitigating circumstances presented and argued by the defense. By its recommendation of death, the jury in fact found an aggravating circumstance and moreover found it outweighed mitigation. Based on that recommendation the trial court imposed the *703 recommended sentence and discussed and weighed the same aggravating and mitigating circumstances that had been presented to the jury.
Thus, based on the precedent from this Court, I would conclude that the decision in Ring does not render the Florida death penalty provisions unconstitutional because the Florida trial judge and the jury jointly make the decision concerning the existence of aggravating circumstances.
ANSTEAD, C.J., concurring in result only.
I concur in the denial of relief in this case, but write separately to underscore both the concerns of my colleagues, as well as my own, as to the impact of the U.S. Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), on Florida's death penalty scheme. Ring is clearly the most significant death penalty decision of the U.S. Supreme Court since the decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), invalidating the death penalty schemes of virtually all states. Under our dual responsibilities to interpret state law and to enforce the U.S. Constitution, we cannot simply stand mute in the face of such a momentous decision. We are, of course, bound to apply the Supreme Court's interpretation of the requirements of the Sixth Amendment as set out in Ring to our own death penalty jurisprudence.[15]
The United States Supreme Court has now held in Ring that its prior decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requiring findings of fact by a jury of sentencing factors that may affect the ultimate penalty and sentence imposed, does apply to death penalty cases. That holding means that juries, not judges, must make the findings of fact that determine the existence of aggravating circumstances that in turn may be used as the justification and predicate for a death sentence. This holding, of course, conflicts with our previous denial of relief to Bottoson based on our erroneous conclusion that the Supreme Court would not apply Apprendi to death penalty cases. The decision in Ring makes our error apparent.
The question is where do we go from here. Prior to its decision in Ring, the Supreme Court had rejected numerous constitutional attacks on Florida's death penalty scheme, including a Sixth Amendment challenge in Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989).[16] The plurality opinion has chosen *704 to retreat to the "safe harbor" of these prior U.S. Supreme Court decisions upholding Florida's death penalty scheme, as well as the Supreme Court's failure to confront those decisions in Ring. While I join in the denial of relief to Bottoson, I must also acknowledge that, after Ring, that harbor may not be so safe.[17] The safety of that harbor may be particularly at risk if Justice Scalia's Sixth Amendment analysis in Ring is accepted as correct.

WALTON
At the outset, while we must acknowledge that the U.S. Supreme Court in Ring simply failed to give express direction as to the impact of Ring on Florida's death penalty scheme, we cannot properly ignore the fact that the same Court has previously observed that Florida's death penalty scheme is no different than Arizona's in failing to provide for jury findings:
The distinctions Walton attempts to draw between the Florida and Arizona statutory schemes are not persuasive. It is true that in Florida the jury recommends a sentence, but it does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances and its recommendation is not binding on the trial judge. A Florida trial court no more has the assistance of a jury's findings of fact with respect to sentencing issues than does a trial judge in Arizona.

Walton, 497 U.S. at 648, 110 S.Ct. 3047 (emphasis supplied). In view of the Supreme Court's express observation in Walton as to the lack of a requirement for jury findings in Florida, I believe we have an obligation to address the impact of Apprendi and Ring on Florida's sentencing scheme in greater detail than the examination contained in the plurality opinion. After all, the Supreme Court in Ring has already dramatically departed from its own precedent when it acknowledged error in its previous evaluation of this issue in Walton, where it had concluded that the Sixth Amendment did not require that the specific findings authorizing the imposition of death be made by the jury.

Specific Concerns
While I concur in the plurality's respect for prior U.S. Supreme Court decisions upholding Florida's death penalty scheme, I must express my concerns that Florida's scheme may not comply with the Sixth Amendment as now construed in Ring in the following respects:
1. Florida's scheme requires a finding of the existence of aggravating circumstances before a death penalty may be imposed.[18] That scheme relies upon finding of facts determining the existence of statutory aggravators that have been made by a judge and not by a jury. Perhaps most importantly, it is the findings of fact made by the trial judge that are actually relied upon by the same trial judge in *705 determining the capital defendant's sentence, and it is these same findings of fact that are actually reviewed and relied upon by this Court in determining whether the trial court's sentence should be upheld.
2. A Florida trial judge not only independently determines the existence of aggravators, but in doing so is not limited to the aggravation that may have been submitted to the jury. Further, in some instances, the trial judge is vested with the authority to override the jury's advisory recommendation as to penalty.
3. In Florida, neither the jury nor any individual juror makes any findings of fact or any actual determination of the existence of any aggravating circumstances. Hence, no jury findings of fact are considered by the trial court in making its own findings of fact and in determining a sentence, and no jury findings of fact are considered by this Court on review of the trial judge's sentence. Rather, the trial court is limited to a consideration of the jury's advisory recommendation.
4. In Florida, the jury renders only an advisory recommendation as to penalty.
5. A Florida jury's advisory recommendation is not required to be unanimous.
As noted above, these concerns are magnified when considered in light of Justice Scalia's separate concurring opinion in Ring.

JUDICIAL VS. JURY FACT FINDING
If the holdings of Ring and Apprendi are to be applied as written, it is apparent that Florida's sentencing scheme is at risk because of the scheme's express reliance upon findings of fact made by the trial judge rather than findings of fact made by a jury in determining the existence of aggravating circumstances which must be established and utilized as a basis for imposing the penalty of death.[19]Ring and *706 Apprendi expressly hold that defendants are entitled to a jury determination and findings of fact as to the existence of any aggravating factors necessary to increase their sentences. As the Court explained in Ring:

Apprendi ... held that the Sixth Amendment does not permit a defendant to be "expose[d] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." This prescription governs, Apprendi determined, even if the State characterizes the additional findings made by the judge as "sentencing factor[s]".
Ring, 536 U.S. at ___, 122 S.Ct. at 2432 (quoting Apprendi, 530 U.S. at 492, 120 S.Ct. 2348) (citation omitted). In extending Apprendi and Sixth Amendment protection to the determination of aggravating factors that are applied to capital defendants the Court made clear, "Capital defendants, no less than non-capital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." Id.
Thus, Ring requires that the aggravating circumstances necessary to enhance a particular defendant's sentence to death must be found by a jury beyond a reasonable doubt in the same manner that a jury must find that the government has proven all the elements of the crime of murder in the guilt phase. It appears that the provision for judicial findings of fact and the purely advisory role of the jury in capital sentencing in Florida falls short of the mandates announced in Ring and Apprendi for jury fact-finding.

JUDICIAL FINDINGS OF FACT
The Ring decision essentially holds that the Sixth Amendment right to trial by jury mandates that a jury make the findings of fact necessary to impose the death sentence, and conversely, the Sixth Amendment precludes the imposition of the death sentence when the responsibility for such factfinding is done by a judge, as it is in Florida.
Regardless of the jury's collective or individual advisory recommendation, Florida's death sentencing statute states that it is the trial court that "shall enter a sentence of life imprisonment or death." § 921.141(3), Fla. Stat. (2001). Further, and critical to the resolution of the Ring issue, our statute provides, "In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings *707 of fact based upon the [aggravating and mitigating] circumstances ... and upon the records of the trial and the sentencing proceedings." Id. (emphasis supplied). Even in cases where the jury has given an advisory recommendation of death, "[i]f the court does not make the findings requiring the death sentence within 30 days after the rendition of the judgment and sentence, the court shall impose sentence of life imprisonment." Id.[20]
In Spencer v. State, 615 So.2d 688 (Fla. 1993), we explained the critical importance that the trial court plays in conducting capital sentencing under Florida law:
In Grossman [v. State, 525 So.2d 833 (Fla.1988) ], we directed that written orders imposing the death sentence be prepared prior to the oral pronouncement of sentence. However, we did not perceive that our decision would be used in such a way that the trial judge would formulate his decision prior to giving the defendant an opportunity to be heard. We contemplated that the following procedure be used in sentencing phase proceedings. First, the trial judge should hold a hearing to: a) give the defendant, his counsel, and the State, an opportunity to be heard; b) afford, if appropriate, both the State and the defendant an opportunity to present additional evidence; c) allow both sides to comment on or rebut information in any presentence or medical report; and d) afford the defendant an opportunity to be heard in person. Second, after hearing the evidence and argument, the trial judge should then recess the proceeding to consider the appropriate sentence. If the judge determines that the death sentence should be imposed, then, in accordance with section 921.141, Florida Statutes (1983), the judge must set forth in writing the reasons for imposing the death sentence....
It is the circuit judge who has the principal responsibility for determining whether a death sentence should be imposed.
Id. at 690-91. The judge's written findings are of the utmost importance, of course, for the very reason that the jury makes no findings of fact, but rather provides only an advisory recommendation to the sentencing judge by a simple majority, nonunanimous vote as to whether a particular defendant should be put to death.
That Florida's sentencing scheme relies exclusively upon the findings of fact made by the trial judge is perhaps best evidenced by the hundreds of opinions this Court has rendered interpreting Florida's current death penalty scheme since the death penalty was reenacted into Florida law a quarter century ago. In those opinions this Court has consistently reviewed *708 and relied on the factual findings of judges, rather than juries, to determine whether the death penalty was properly imposed. See, e.g., Morton v. State, 789 So.2d 324, 333 (Fla.2001) ("The sentencing order is the foundation for this Court's proportionality review, which may ultimately determine if a person lives or dies.").

JUDICIAL REVIEW
In addition to the necessity for the specific determination of aggravating circumstances in the trial court, an essential ingredient to the constitutionality of Florida's death penalty scheme is this Court's careful review of the sentencing process. Since the very inception of Florida's current death penalty scheme we have relied not upon findings of fact by a jury, but rather upon the judge's written findings of fact to facilitate our review:
A trial judge's justifying a death sentence in writing provides "the opportunity for meaningful review" in this Court. Specific findings of fact based on the record must be made and the trial judge must "independently weigh the aggravating and mitigating circumstances to determine whether the death penalty or a sentence of life imprisonment should be imposed."
Bouie v. State, 559 So.2d 1113, 1116 (Fla. 1990) (citations omitted). Our review has never relied on findings of fact by the jury since such findings are not required by Florida's statutory scheme. In fact, we have expressly held that findings of fact by the jury are not required to establish the application of sentencing aggravators to the trial judge's sentencing analysis. See Jones v. State, 569 So.2d 1234, 1238 (Fla. 1990) (rejecting defendant's claim that federal constitution "require[s] jurors to use a special verdict form and to unanimously agree upon the existence of the specific aggravating factors applicable in each case"). The holding of Jones is simply one of many of our prior decisions that may be affected by Ring.

ADVISORY RECOMMENDATION
On the other hand, and compared to our ability to review the actual findings of fact made by the trial judge, there could hardly be any meaningful appellate review of a Florida jury's advisory recommendation to a trial judge since that review would rest on sheer speculation as to the basis of the recommendation, whether considering the jury collectively or the jurors individually. In other words, from a jury's bare advisory recommendation, it would be impossible to tell which, if any, aggravating circumstances a jury or any individual juror may have determined existed. And, of course, a "recommendation" is hardly a finding at all.
Justice Shaw has previously explained that the jury's verdict does not encompass reviewable findings of fact:
As a matter of law, as we hold here, the jury's recommendation is merely advisory; the trial judge is the sentencer and must base the sentence on an independent weighing of the aggravating and mitigating factors, notwithstanding the jury recommendation. Second, under section 921.141, the jury's advisory recommendation is not supported by findings of fact. This presents a serious Furman [v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ] problem because, if Tedder [v. State, 322 So.2d 908 (Fla.1975) ] deference is paid, both this Court and the sentencing judge can only speculate as to what factors the jury found in making its recommendation and, thus, cannot rationally distinguish between those cases where death is imposed and those where it is not. Florida's statute is unlike those in *709 states where the jury is the sentencer and is required to render special verdicts with specific findings of fact.
Combs v. State, 525 So.2d 853, 859 (Fla. 1988) (Shaw, J., specially concurring). Indeed, this Court has stated that a judge can find aggravating circumstances that have never been presented to a jury. See, e.g., Davis v. State, 703 So.2d 1055, 1061 (Fla.1998) ("We have held that it is not error for a judge to consider and find an aggravator that was not presented to or found by the jury."); Sims v. State, 681 So.2d 1112, 1119 (Fla.1996) (finding "that the court did not commit error by finding an aggravating circumstance which was not alleged by the state and for which the jury received no instruction").
Our reliance upon the trial judge's exclusive authority to make findings of fact as to aggravation is exemplified by our holding in Engle v. State, 438 So.2d 803, 813 (Fla.1983). In that case, a capital defendant asserted that his due process rights were violated when the State was permitted to argue two aggravating factors before the judge at sentencing which had not been argued before the jury. See id. The defendant argued that he should have been allowed "to have the existence and validity of aggravating circumstances determined as they were placed before his jury." Id. We rejected this argument, stating specifically that the trial judge "is not limited in sentencing to consideration of only that material put before the jury, is not bound by the jury's recommendation, and is given final authority to determine the appropriate sentence." Id. Of course, Florida's statutory scheme also vests authority in the trial judge to "override" the jury's advisory recommendation in some instances. See § 921.141(3), Fla. Stat. (2001) ("Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death...."). Hence, in some cases, the participation of the jury, however defined, may be discounted.

LACK OF UNANIMOUS VERDICT
As noted above, Apprendi and Ring also stand for the proposition that under the Sixth Amendment, a determination of the existence of aggravating sentencing factors, just like elements of a crime, must be found by a unanimous jury vote. As the Supreme Court expressly noted in Ring, "[t]he right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death." Ring, 536 U.S. at ___, 122 S.Ct. at 2443.[21]
*710 Of course, Florida has long required unanimous verdicts in all criminal cases including capital cases. Florida Rule of Criminal Procedure 3.440 states that no jury verdict may be rendered unless all jurors agree. Furthermore, in Jones v. State, 92 So.2d 261 (Fla.1956), this Court held that any interference with the right to a unanimous verdict denies the defendant a fair trial. However, in Florida, the jury's advisory recommendation in a capital case is not statutorily required to be by unanimous vote. The jury's advisory recommendation may be by mere majority vote. This would appear to constitute another visible constitutional flaw in Florida's scheme when the Sixth Amendment right to a jury trial is applied as it was in Apprendi and Ring.

CONCLUSION
In sum, in Florida, the responsibility for determining whether and which aggravating circumstances apply to a particular defendant falls squarely upon the trial judge, and it is those findings by the judge that are actually utilized to decide whether the death sentence is imposed, and that are reviewed by this Court on appeal. Like Arizona, Florida permits a judge to determine the existence of the aggravating factors which must be found to subject a defendant to a sentence of death, and it is the judge's factual findings that are then considered and reviewed by this Court in determining whether a particular defendant's death sentence is appropriate. Thus, we appear to be left with a judicial fact-finding process that is directly contrary to the U.S. Supreme Court's holding in Ring.
As noted earlier, the plurality opinion has chosen to retreat to the "safe harbor" of prior United States Supreme Court decisions upholding Florida's death penalty scheme. That may well be the "safe" option since it will require the Supreme Court to act affirmatively to explain its prior holdings in light of Apprendi and Ring. However, when one examines the holdings of Ring and Apprendi and applies them in a straightforward manner to a Florida scheme that requires findings of fact by a judge and not a jury, it is apparent that the harbor may not be all that safe.
The U.S. Supreme Court in Ring was prompt to acknowledge its prior mistake in not applying the holding of Apprendi to capital sentencing. Further, and perhaps critical to a determination of the effect of Ring in Florida, the Court in Walton has observed, "A Florida trial court no more has the assistance of a jury's findings of fact with respect to sentencing issues than does a trial judge in Arizona." Walton, 497 U.S. at 648, 110 S.Ct. 3047. We will simply have to wait and see whether the U.S. Supreme Court will also concede a prior mistake in its failure to apply Apprendi to Florida's sentencing scheme, or whether it will somehow distinguish the Florida scheme as exempt from its recent holdings.[22]
SHAW, J., concurring in result only.
I do not agree that the United States Supreme Court's decision denying certiorari and lifting the stay of execution in the present case constitutes either a validation of Florida's capital sentencing statute or an approval of Bottoson's execution. I feel that the Supreme Court simply was following *711 its own precedent, which holds that in the federal court systema new rule of law such as that announced in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), generally will not be applied in postconviction cases. See Teague v. Lane, 489 U.S. 288, 305, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ("[N]ew rules [of law] generally should not be applied retroactively to cases on collateral review.").[23] Florida state courts, however, are not bound by that precedent.[24] I believe that this State's highest Court has an obligation to evaluate the validity of Florida's capital sentencing statute in light of Ring.
In my opinion, when the dictates of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), are imposed on Florida's capital sentencing statute, the statute violates settled principles of state law. The rule of law that I glean from Ring is that an aggravating circumstance that "death qualifies" a defendant is the functional equivalent of an element of the offense. If this is a correct reading of Ring, then that aggravator must be treated like any other element of the charged offense and, under longstanding Florida law, must be found unanimously by a jury.[25] Florida's capital sentencing statute, however, currently contains no unanimity requirement for a "death qualifying" aggravator. Nevertheless, for reasons set forth below, I agree that Bottoson is not entitled to relief under Ring.

I. RING v. ARIZONA

Timothy Ring was convicted of first-degree murder for his role in a murder committed during the course of an armed robbery. The Arizona capital sentencing statute operates as follows:
Under Arizona law, Ring could not be sentenced to death, the statutory maximum penalty for first-degree murder, unless further findings were made. The State's first-degree murder statute prescribes that the offense "is punishable by death or life imprisonment as provided by s. 13-703." The cross-referenced section, s. 13-703, directs the judge who presided at trial to "conduct a separate sentencing hearing to determine the existence or nonexistence of [certain enumerated] circumstances ... for the purpose of determining the sentence to be imposed." The statute further instructs: "The hearing shall be conducted before the court alone. The court alone shall make all factual determinations required by this section or the constitution of the United States or this state."
At the conclusion of the sentencing hearing, the judge is to determine the presence or absence of the enumerated "aggravating circumstances" and any "mitigating circumstances." The state's law authorizes the judge to sentence the defendant to death only if there is at *712 least one aggravating circumstance and "there are no mitigating circumstances sufficiently substantial to call for leniency."
Ring v. Arizona, 536 U.S. 584, ___ _ ___, 122 S.Ct. 2428, 2434-35, 153 L.Ed.2d 556 (2002) (citations and footnotes omitted).
In Ring's case, the judge conducted a penalty phase hearing, found that two aggravating circumstances[26] and one nonstatutory mitigating circumstance[27] had been established, and sentenced Ring to death. The Arizona Supreme Court struck one aggravating circumstance[28] and affirmed the conviction and sentence. The United States Supreme Court granted certiorari and reversed.
The Supreme Court noted that in Arizona at least one aggravating circumstance must be found in order to impose a sentence of death, and the Court framed the issue in Ring thusly:
Based solely on the jury's verdict finding Ring guilty of first-degree felony murder, the maximum punishment he could have received was life imprisonment. This was so because, in Arizona, a "death sentence may not legally be imposed ... unless at least one aggravating factor is found to exist beyond a reasonable doubt." The question presented is whether that aggravating factor may be found by the judge, as Arizona law specifies, or whether the Sixth Amendment's jury trial guarantee ... requires that the aggravating factor determination be entrusted to the jury.
Ring, 536 U.S. at ___, 122 S.Ct. at 2437 (citations and footnote omitted) (emphasis added).
In conducting its analysis, the United States Supreme Court reviewed two of its prior cases and found that they were irreconcilable. In Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the Court had held that an aggravating circumstance under the Arizona capital sentencing scheme did not operate as an "element of the offense" but as a "sentencing consideration" and thus could be found by a judge instead of a jury. On the other hand, the Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), had held that a "hate crime" aggravating circumstance, which enhanced the sentence for a crime based on racial animus, operated as "the functional equivalent of an element of the offense," not as a "sentencing consideration," and thus must be found by a jury, not a judge.
The Court in Ring endorsed the holding of Apprendi and overruled Walton based on the following reasoning:
Capital defendants, no less than non-capital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.
Ring, 536 U.S. at ___, 122 S.Ct. at 2432. The Court rejected outright the State of Arizona's claim that, because the capital sentencing statute prescribed "death or life imprisonment" for first-degree murder, Ring had been sentenced to no more than the maximum punishment authorized by the jury verdict:
This argument overlooks Apprendi's instruction that "the relevant inquiry is one not of form, but of effect." In effect, "the required finding of an aggravated *713 circumstance exposed Ring to a greater punishment than that authorized by the jury's guilty verdict." ... If Arizona prevailed on its opening argument, Apprendi would be reduced to a "meaningless and formalistic" rule of statutory drafting.
Ring, 536 U.S. at ___ _ ___, 122 S.Ct. at 2440-41 (citations and brackets omitted).
The Court concluded that, because at least one aggravating circumstance must be found before a death sentence can be imposed, the finding of that particular aggravating circumstance operated as the "functional equivalent" of an element of the offense:
For the reasons stated, we hold that Walton and Apprendi are irreconcilable; our Sixth Amendment jurisprudence cannot be home to both. Accordingly, we overrule Walton to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty. Because Arizona's enumerated aggravating factors operate as "the functional equivalent of an element of a greater offense," the Sixth Amendment requires that they be found by a jury.
Ring, 536 U.S. at ___, 122 S.Ct. at 2443 (citations omitted).
The Court in Apprendi articulated a single exception to the Ring requirement concerning jury findings:

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.
Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). Thus, an aggravating circumstance based on a prior conviction can be found by a judge.

II. FLORIDA'S CAPITAL SENTENCING STATUTE
Under Florida law, two types of first-degree murder are proscribed by statute i.e., murder committed by premeditated design, and murder committed in the course of a felonyand both are capital felonies.[29] At the time of Bottoson's crime, the penalty for a capital felony was as follows:
775.082 Penalties.
(1) A person who has been convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than 25 years before becoming eligible for parole unless the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, and in the latter event such person shall be punished by death.
§ 775.082(1), Fla. Stat. (1979) (emphasis added).[30]
Under Florida's capital sentencing statute, once a defendant has been convicted of a capital felony, the court conducts a *714 penalty proceeding before a jury.[31] If a majority of jurors find from the facts that at least one aggravating circumstance is present, i.e., a "death qualifying" aggravator, they then may decide upon death as the appropriate sentence, or six or more jurors may decide upon life imprisonment as the appropriate sentence.[32] The jury then renders its advisory sentence to the judge,[33] who must give it great weight.[34] The sentencing judge, after conducting an independent weighing of aggravating and mitigating circumstances,[35] imposes sentence.[36] A sentence of death is automatically reviewed by this Court.[37]

III. THE REQUIREMENT OF UNANIMITY
It is settled in Florida that the State in a criminal prosecution has the burden of proving each element of the charged offense beyond a reasonable doubt.[38] Before jurors can return a guilty verdict, they must unanimously agree that each element of the charged offense has been established beyond a reasonable doubt.[39] This requirement of unanimity has been an inviolate tenet of Florida jurisprudence since the State was created.
Although neither the Sixth[40] nor Fourteenth[41] Amendments to the federal constitution require unanimous jury verdicts in noncapital state trials, the requirement was an integral part of all jury trials in the Territory of Florida in 1838[42] and was adopted at the first constitutional convention in Port St. Joe:

ARTICLE I

DECLARATION OF RIGHTS
That the great and essential principles of liberty and free government, may be recognized and established, we declare:
. . . .
6. That the right of trial by jury, shall for ever remain inviolate.

Art. I, § 6, Fla. Const. of 1838 (emphasis added). Further, because this requirement was part of the English common law when our state was founded, it was adopted and codified by the Florida Legislature.[43]
*715 The unanimity requirement long has been recognized by Florida courts[44] and was memorialized by this Court more than a century ago:
The procedure in returning verdicts in cases of felony ... is in substance as follows: When the jury have come to an unanimous agreement with respect to their verdict, they return to the box to deliver it. The clerk then calls them over, by their names, and asks them whether they agree on their verdict; to which they reply in the affirmative. He then demands who shall say for them; to which they answer, their foreman. This being done, he directs the prisoner to hold up his right hand, and, addressing the jury says: "Look upon the prisoner, you who are sworn. How say you? Is he guilty of the felony whereof he stands indicted, or not guilty?" The foreman then answers, "Guilty," or "Not guilty," as the verdict may be. The officer then writes the word "Guilty," or "Not guilty," as the verdict is, on the record, and again addresses the jury: "Hearken to your verdict, as the court hath recorded it. You say that (A.) Is guilty (or not guilty) of the felony whereof he stands indicted, and so say you all."

Grant v. State, 33 Fla. 291, 14 So. 757, 758 (1894) (emphasis added). The requirement has been formalized in this Court's rules of criminal procedure[45] and our standard jury instructions in criminal cases.[46]

IV. APPLICABILITY OF RING TO FLORIDA
The United States Supreme Court in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), held that "an aggravating circumstance necessary for imposition of the death penalty" operates as "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict."[47] I take this to mean that an aggravating circumstance necessary for imposition of the death sentence must be subjected to the same rigors of proof as every other element of the charged offense.
In Florida, a defendant cannot be sentenced to death based on a jury's guilty verdict alone; an additional factual finding of at least one aggravating circumstance must be made in a separate penalty phase proceeding before a jury.[48] Because a *716 finding of at least one aggravating circumstance is necessary to render a defendant "death qualified," that particular aggravator is indeed, under Ring, the "functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." In the lexicon of Ring, for sentencing purposes, first-degree murder with at least one aggravating circumstance is "a greater offense" than first-degree murder without an aggravating circumstance.
This is consonant with the pronouncement of the United States Supreme Court in Apprendi that an aggravating circumstance functioning as an element of an offense cannot be subjected to a lesser standard of proof than any other element of the offense:
If a defendant faces punishment beyond that provided by [the jury's verdict] under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not at the moment the State is put to proof of those circumstancesbe deprived of protections that have, until that point, unquestionably attached.
Apprendi, 530 U.S. at 484, 120 S.Ct. 2348.
As explained above, under longstanding Florida law, every element of a charged offense must be found by a jury (not a judge), must be found beyond a reasonable doubt, and must be found unanimously. If the presence of at least one aggravating circumstance "death qualifies" a defendant and is the "functional equivalent" of an element of the offense, then the finding of that qualifying aggravator must be held to the same exacting standards as every other element. Florida's standard jury instructions for penalty proceedings in capital cases address the standards for aggravating circumstances:
Each aggravating circumstance must be established beyond a reasonable doubt before it may be considered by you in arriving at your decision.
. . . .
If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.
A mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established.
The sentence that you recommend to the court must be based upon the facts as you find them from the evidence and the law. You should weigh the aggravating circumstances against the mitigating circumstances, and your advisory sentence must be based on these considerations.
In these proceedings it is not necessary that the advisory sentence of the jury be unanimous.
. . . .
If a majority of the jury determine that (defendant) should be sentenced to death, your advisory sentence will be:
A majority of the jury, by a vote of _______, advise and recommend to the court that it impose the death penalty upon (defendant).
On the other hand, if by six or more votes the jury determines that (defendant) should not be sentenced to death, your advisory sentence will be:
The jury advises and recommends to the court that it impose a sentence of life imprisonment upon (defendant) *717 without possibility of parole.
You will now retire to consider your recommendation. When you have reached an advisory sentence in conformity with these instructions, that form of recommendation should be signed by your foreperson and returned to the court.
Fla. Std. Jury Instr. (Crim.) 7.11 (emphasis added).
Nowhere in Florida law is there a requirement that the finding of an aggravating circumstance must be unanimous. Ring, however, by treating a "death qualifying" aggravator as an element of the offense, imposes upon that aggravator the same rigors of proof as other elements, including Florida's requirement of a unanimous jury finding. Ring, therefore, has a direct impact on Florida's capital sentencing statute.

V. RETROACTIVITY
Having determined that Ring is applicable to Florida's capital sentencing statute, the next question that must be answered is whether Ring should be applied retroactively in the present case. This Court in Witt v. State, 387 So.2d 922 (Fla.1980), summarized Florida's criteria for determining whether a change in the decisional law must be applied retroactively in postconviction proceedings:
To summarize, we today hold that an alleged change of law will not be considered in a capital case under Rule 3.850 unless the change: (a) emanates from this Court or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance.
Witt, 387 So.2d at 931.
Applying the above criteria to the holding of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), I conclude that Ring must be applied retroactively in the present case. First, Ring falls within the ambit of Witt, for it emanated from the United States Supreme Court. Second, Ring is constitutional in nature, for its holding goes to the very heart of the constitutional right to trial by jury. And third, Ring is of "fundamental significance," for its purpose is to safeguard the basic protections guaranteed by the right to trial by jury.[49] This Court in the past has applied retroactively other significant decisions of the United States Supreme Court in the capital sentencing area.[50]
*718 The State contends that Bottoson cannot obtain relief under Ring because he failed to raise this issue at trial. I find this contention disingenuous in light of the fact that Bottoson was tried nearly twenty years before Apprendi was decided and thus had no basis for arguing that a "death qualifying" aggravator must be treated as an element of the offense. In point of fact, there is no indication that either the Arizona Supreme Court[51] or the United States Supreme Court[52] required that Ring himself raise the issue at trial, and yet both courts reviewed his claim and the United States Supreme Court granted relief.[53]

VI. CONCLUSION
I read Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), as holding that "an aggravating circumstance necessary for imposition of a death sentence" operates as "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict" and must be subjected to the same rigors of proof as every other element of the offense.[54] Because Florida's capital sentencing statute requires a finding of at least one aggravating circumstance as a predicate to a recommendation of death, that "death qualifying" aggravator operates as the functional equivalent of an element of the offense and is subject to the same rigors of proof as the other elements. When the dictates of Ring are applied to Florida's capital sentencing statute, I believe our statute is rendered flawed because it lacks a unanimity requirement for the "death qualifying" aggravator.
I conclude, however, that this defect can be easily remedied by adding to the Florida Standard Jury Instructions in Criminal Cases the following instruction:
In order to recommend a sentence of death, you must unanimously find that at least one aggravating circumstance is present beyond a reasonable doubt; this finding must be based on the facts as you find them from the evidence.
I would refer this matter for study to this Court's Committee on Standard Jury Instructions in Criminal Cases.
In the present case, Bottoson contends that his death sentence is invalid under Ring and that he is entitled to a new penalty phase trial before a jury. The record, however, shows that Bottoson's death sentence was based on at least one "death qualifying" aggravating circumstance: "[A]ppellant had previously been convicted of a crime involving the threat of violence."[55] Under Apprendi, this particular *719 factor is excluded from Ring's purview and, standing by itself, can serve as a basis to "death qualify" a defendant.[56]
Accordingly, I agree that Bottoson's petition for a writ of habeas corpus must be denied.
PARIENTE, J., concurring in result only.
I concur in the denial of relief to Bottoson but write to express my separate reasons and underlying concerns. Bottoson's claim is that Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), requires this Court to find Florida's death penalty statute unconstitutional under the Sixth Amendment to the United States Constitution. Because the United States Supreme Court in Ring neither overruled its prior precedent, other than Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), nor explicitly addressed Florida's sentencing statute, I would not disturb the finality of Bottoson's death sentence.[57] Moreover, although the jury recommended death by a vote of 10-2, one of Bottoson's aggravators included a prior violent felony.
However, based on the reasoning of the majority of the United States Supreme Court in Ring and Justice Scalia's separate concurrence in Ring, I agree with Chief Justice Anstead that Ring does raise serious concerns as to potential constitutional infirmities in our present capital sentencing scheme. In this regard I continue to adhere to the concerns I previously expressed in my separate opinion concurring in the stay of Bottoson's execution, where I stated:
In short, what is of concern about Florida's death penalty scheme in light of Ring is that our statute appears to reverse the traditional roles of the judge and the jury in sentencing.... [U]nder Florida's sentencing scheme the jury's role is to advise the judge on the sentence, and it can make a recommendation of death based on a bare majority. The jury does not find specific aggravating factors. Thus, it is the jury that recommends a sentence and the judge who finds the specific aggravators.
Bottoson v. Moore, 824 So.2d 115, 121-22 (Fla.2002) (Pariente, J., concurring). I write separately now not only to explain my reasons for denying Bottoson relief on this issue, but also to emphasize my concerns with Florida's death statute and articulate my recommendations for administering the statute in light of Ring.

MAXIMUM PENALTY
As a threshold matter, I believe the Supreme Court's decision in Ring requires this Court to recede from its previous holding in Mills v. Moore, 786 So.2d 532, 537-38 (Fla.2001), that death is the maximum penalty for first-degree murder in Florida. Although the sentencing schemes in Florida and Arizona differ in that an Arizona jury has no role in the penalty phase of a death penalty proceeding, the statutes are otherwise identical regarding the prerequisites to the imposition of the maximum penalty. In Florida, section 782.04(1)(a) defines first-degree murder as *720 a capital felony and section 782.04(1)(b) provides that the procedure in section 921.141 shall be followed to determine a sentence of death or life imprisonment. In Arizona, first-degree murder is a Class 1 felony and is punishable by death or life imprisonment. See Ariz.Rev.Stat. § 13-1105 (2001). Thus, by examining only the form of the statutes, it could be argued that in both Florida and Arizona the maximum penalty for first-degree murder is death. Indeed, the State of Arizona advanced this precise argument when it asserted in Ring that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), did not render its capital sentencing statute infirm.
In rejecting Arizona's argument, the Court in Ring explained that if Arizona prevailed, "Apprendi would be reduced to a `meaningless and formalistic' rule of statutory drafting." Ring, 536 U.S. at ___, 122 S.Ct. at 2441. The Court explicitly stated that the relevant question was "not of form, but of effect." Id. at 2440 (emphasis supplied). In considering Arizona's statute, the Court noted that "[t]he Arizona first-degree murder statute `authorizes a maximum penalty of death only in a formal sense,' for it explicitly cross-references the statutory provision requiring the finding of an aggravating circumstance before imposition of the death penalty." Id. (citation omitted) (emphasis supplied); see Ariz.Rev.Stat. §§ 13-1105(C), 13-703(6) (2001).
Similar to the Arizona statute at issue in Ring, Florida's death statute explicitly cross-references the statutory provisions of section 921.141, which requires additional findings by a judge, not by a jury, as the precondition for imposition of the death penalty. Section 775.082(1), Florida Statutes, provides:
A person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole.
(Emphasis supplied.) Section 921.141(3) states, in pertinent part:

Notwithstanding the recommendation of a majority of the jury, the court, after weighing the aggravating and mitigating circumstances, shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based as to the facts:
(a) That sufficient aggravating circumstances exist as enumerated in subsection (5), and
(b) That there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
(Emphasis supplied.) As we explained in upholding Florida's post-Furman capital sentencing scheme in State v. Dixon, 283 So.2d 1 (Fla.1973), a defendant convicted of first-degree murder is "provided with five steps[58] between conviction and imposition of the death penalty":
It is necessary at the outset to bear in mind that all defendants who will face the issue of life imprisonment or death will already have been found guilty of a most serious crime, one which the Legislature has chosen to classify as capital. After his adjudication, this defendant is *721 nevertheless provided with five steps between conviction and imposition of the death penaltyeach step providing concrete safeguards beyond those of the trial system to protect him from death where a less harsh punishment might be sufficient.
Id. at 7.
In State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001), the Arizona Supreme Court analyzed the Arizona death statute and stated:
The range of punishment allowed by law on the basis of the verdict alone is life imprisonment with the possibility of parole or imprisonment for "natural life" without the possibility of release. It is only after a subsequent adversarial sentencing hearing, at which the judge ... acts as the finder of the necessary statutory factual elements, that a defendant may be sentenced to death.
Id. Just like the Arizona sentencing scheme at issue in Ring, Florida's sentencing scheme requires additional findings by the judge before the death penalty can be imposed. See § 775.082. Neither the statutory label nor a dictionary definition[59] should obscure the effect of Florida's sentencing scheme.[60] In Florida, just as in Arizona, the death penalty cannot be imposed unless and until a trial court makes the additional findings of fact both that the aggravating circumstances exist and that the aggravators outweigh the mitigators. Life is the maximum penalty available under Arizona law for the defendant's crime based solely on the jury's verdict of guilt of first-degree murder. Similarly, in Florida, a first-degree murder verdict without additional findings pursuant to section 921.141 subjects a defendant to no more than a life sentence. See § 775.082(1) (stating that without findings by the court that a defendant "shall be punished by death, ... such person shall be punished by life imprisonment").[61]
The additional jury findings of aggravators before imposition of death are mandated not only by the plain language of the capital sentencing statute, but also by the Eighth Amendment to the United States Constitution as interpreted in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its progeny. Indeed, as recognized by Justice Scalia in his concurring opinion in Ring, "the only reason *722 the fact [the aggravating factor] is essential is that [the United States Supreme] Court has ... said that the Constitution requires state law to impose such `aggravating factors.'" 536 U.S. at ___, 122 S.Ct. at 2444 (Scalia, J., concurring). Thus, while the Eighth Amendment requires the findings of aggravating factors in an effort to ensure against the death penalty being imposed arbitrarily, the Sixth Amendment as interpreted by Ring requires that those aggravating factors be found by a jury. As Justice Scalia explained in Ring, the bottom line is that "the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receiveswhether the statute calls them elements of the offense, sentencing factors, or Mary Janemust be found by a jury." Id. (emphasis supplied).
On this initial essential question of the maximum penalty for first-degree murder, I must conclude that the maximum penalty after a finding of guilt in Florida is life imprisonment. The death penalty for first-degree murder cannot be imposed unless and until additional factual findings are made as to the existence of aggravators that outweigh the mitigatorsjust as in Arizona. I would thus recede from our decision in Mills to the extent that Mills held first that Apprendi did not apply to capital sentencing and second that the maximum penalty for first-degree murder in Florida is death. See Mills, 786 So.2d at 537-38. The statement in Mills as to the maximum penalty may be true in form, but through the lens of Ring the statement is not true in effect.

PRIOR VIOLENT FELONY AGGRAVATOR
I share the concerns expressed by Justice Shaw in his concurring in result only opinion that Ring may render our sentencing statute invalid under state constitutional law to the extent that there is no requirement that the jury find the existence of aggravators by unanimous verdict. As noted above, in this case the jury recommended the death penalty by a vote of 10-2. However, notwithstanding my concerns regarding the lack of a requirement of a unanimous verdict as to the aggravators, I would deny relief to Bottoson because one of the four aggravating circumstances found in this case was a prior violent felony. See Bottoson v. State, 443 So.2d 962, 966 (Fla.1983).
In my view, the presence of a prior violent felony conviction meets the threshold requirement of Apprendi as extended to capital sentencing by Ring. In Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the United States Supreme Court approved an enhanced sentence for the crime of returning to the United States after being deported, based on the judge's finding that the deportation was pursuant to three prior convictions of aggravated felonies. The Court rejected a claim that the enhancement was improper because the indictment had not alleged that the deportation was pursuant to the prior convictions. As explained in Apprendi, "our conclusion in Almendarez-Torres turned heavily upon the fact that the additional sentence to which the defendant was subject was `the prior commission of a serious crime.'" 530 U.S. at 488, 120 S.Ct. 2348. In Apprendi, the Court held:
[T]here is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof. *723 Id. at 496, 120 S.Ct. 2348. Accordingly, the Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348 (emphasis supplied).
In extending Apprendi to capital sentencing, the Court in Ring did not eliminate the "prior conviction" exception arising from Almendarez-Torres.[62] The Court noted in Ring that "[n]o aggravating circumstance related to past convictions in his case; Ring therefore does not challenge Almendarez-Torres." 536 U.S. at ___n. 4, 122 S.Ct. at 2437 n. 4. Thus, Bottoson should not be entitled to relief pursuant to Ring because at least one of Bottoson's aggravators included a prior violent felony. Cf. State v. Jones, 203 Ariz. 1, 49 P.3d 273, 284 (2002) (although death penalty must be reversed in case where jury did not find any of the aggravating circumstances, there may be other cases where reversal may not be required such as the possibility that the jury found the aggravating circumstance).

RECOMMENDATIONS FOR ADMINISTERING FLORIDA'S DEATH STATUTE IN LIGHT OF RING

I believe that we must confront the fact that the implications of Ring are inescapable. Therefore, the remaining question for this Court is whether there are any immediate steps we can take in light of Ring to provide prospective guidance to the trial courts. In my view, there are two concrete steps this Court can and should take, both of which will further ensure the integrity of Florida's death penalty proceedings and neither of which would run afoul of our present death penalty scheme.
First, I agree with Justice Lewis that there are deficiencies in our current death penalty sentencing instructions. Because our present standard penalty phase jury instructions emphasize the jury's advisory role and minimize the jury's duty under Ring to find the aggravating factors, Florida's penalty phase jury instructions should be immediately reevaluated so that at a minimum the jurors are told that they are the finders of fact as to the aggravating circumstances. I thus would also concur with Justice Shaw's recommendation for an amended jury instruction to be used prospectively.
Second, I would immediately require that trial courts utilize special verdicts that require the jury to indicate what aggravators the jury has found and the jury vote as to each aggravator.[63] Mandating a special verdict form can be accomplished within the dictates of section 921.141(2), which provides:
(2) ADVISORY SENTENCE BY THE JURY.After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:

*724 (a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);
(b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and
(c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.
In my view, nothing in this subsection precludes specific jury findings as to the existence of the aggravating circumstances. As noted in Chief Justice Anstead's concurring in result only opinion, Florida law already requires jury findings on a number of other sentence enhancement elements or aggravating circumstances. In addition to the burglary statute to which Chief Justice Anstead refers, another noteworthy example of a jury finding necessary for sentence enhancement is the determination that an offender used a firearm or deadly weapon when committing a felony. See State v. Tripp, 642 So.2d 728 (Fla.1994); State v. Overfelt, 457 So.2d 1385 (Fla.1984).
Accordingly, I recommend that each capital sentencing jury utilize a special verdict form to make a finding beyond a reasonable doubt as to each aggravator submitted. Consistent with the current standard penalty-phase instructions, after finding the aggravators the jury should then make an advisory recommendation to the trial judge by majority vote as to whether the defendant should be sentenced to death. See § 921.141(2)-(3).
By requiring a special verdict on aggravating circumstances, this Court will not only assist trial judges in administering section 921.141, but also enhance the quality of our own constitutionally mandated review of death sentences in a manner that anticipates the likely effect of Ring and its progeny. First, the special verdict would serve to facilitate our determination of harmless error during appellate review. Second, the additional procedure would assist in the jury override situation because this Court would know whether the jury's life recommendation was based on a finding of no aggravators or on a determination that the mitigators outweighed the aggravators.[64] Finally, a special verdict form would help to ensure that this Court does not run afoul of the Eighth Amendment by affirming a death sentence based on an invalid aggravatori.e. in this context, an aggravator not properly found by the jury. See Sochor v. Florida, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992) (holding that an Eighth Amendment violation occurred when, under Florida's sentencing scheme, a trial judge weighed an invalid aggravating factor).[65]
*725 By acting prospectively, we can act to ensure that future verdicts comply with our state constitutional requirements, as explained by Justice Shaw, as well as the Sixth Amendment dictates of Ring. These additional findings through special verdicts will also facilitate our appellate review and enhance the integrity of the death penalty verdicts.

CONCLUSION
The crucial question after Ring is "one not of form, but of effect." 536 U.S. at ___, 122 S.Ct. at 2439. In effect, the maximum penalty of death can be imposed only with the additional factual finding that aggravating factors outweigh mitigating factors. In effect, Florida juries in capital cases do not do what Ring mandatesthat is, make specific findings of fact regarding the aggravators necessary for imposition of the death penalty. In effect, Florida juries advise the judge on the sentence and the judge finds the specific aggravators that support the sentence imposed. Indeed, under both the Florida and Arizona schemes, it is the judge who independently finds the aggravators necessary to impose the death sentence. Whether the non-unanimous advisory role of Florida's penalty phase juries is of sufficient constitutional significance under the Sixth Amendment to distinguish Florida's sentencing statute from the Arizona statute invalidated in Ring is a question for the United States Supreme Court to decide. Thus, while we should leave the decision on the validity of Florida's sentencing scheme under the Sixth Amendment to the United States Supreme Court, we can take steps now to ensure future sentencing proceedings in this State do not run afoul of the spirit, intent, and reasoning of Ring.
LEWIS, J., concurring in result only.
While I concur with the result voiced by the majority and the respect and recognition that the United States Supreme Court did not expressly overrule its prior precedent addressing Florida law in this area in the Ring opinion, we fail as a court to acknowledge that we also perceive a number of irreconcilable conflicts even though there are crucial differences between the Florida and Arizona death penalty sentencing statutes. Although there are statutory differences, it is unmistakable that a death penalty cannot be imposed in Florida without a prior factual finding with regard to aggravating factors, and I write separately to delineate several concerns which I believe have been generated to pose serious issues with regard to the application of prior precedent without qualifications. Blind adherence to prior authority, which is inconsistent with Ring, does not, in my view, adequately respond to, or resolve the challenges presented by, the new constitutional framework announced in Ring. For example, we should acknowledge that although decisions such as Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), have not been expressly overruled, at least that portion of Spaziano which would allow trial judges to override jury recommendations of life imprisonment in the face of Sixth Amendment challenges must certainly now be of questionable continuing vitality. Spaziano viewed jury participation through the prism of sentencing, a framework now removed from the analysis adopted in Ring. We should discuss whether Florida's death penalty scheme establishes death as the existing maximum penalty for the crime of first-degree murder; whether current Florida law requiring only a general advisory verdict on the imposition of a death penalty is of continuing validity; and fundamentally, *726 whether the current standard jury instructions given to penalty phase juries in Florida, and in this case, are constitutionally infirm after we digest the import of Ring.
First, although we are not required to face this issue directly today, we should not suggest the continuing validity of the concept of trial courts overriding jury recommendations of life imprisonment in these cases. While I certainly understand and respect the principle that the United States Supreme Court has reserved for itself "the prerogative of overruling its own decisions," Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)), I conclude that a logical reading and comparison of the texts of the Spaziano and Ring opinions produces an inescapable conflict. Thus, just as "Walton and Apprendi are irreconcilable," Ring, 536 U.S. at ___, 122 S.Ct. at 2443, the portions of Spaziano which conflict with the explicit conclusions of Ring are, at best, of dubious continuing vitality.
Florida jurisprudence which has addressed the circumstances under which a judge may override a jury recommendation of life imprisonment and impose a sentence of death has been settled for some time. As analyzed and presented in Tedder v. State, 322 So.2d 908 (Fla.1975), a judicial override of a jury recommendation of life imprisonment is only sustainable when "the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ." Keen v. State, 775 So.2d 263, 283-84 (Fla.2000) (quoting San Martin v. State, 717 So.2d 462, 471 (Fla.1998)). In 1984, Florida's approval of a jury override to impose the death penalty under the Tedder standard was challenged before the United States Supreme Court in Spaziano. The United States Supreme Court opined then:
As the Court several times has made clear, we are unwilling to say that there is any one right way for a State to set up its capital sentencing scheme. The Court twice has concluded that Florida has struck a reasonable balance between sensitivity to the individual and his circumstances and ensuring that the penalty is not imposed arbitrarily or discriminatorily. We are not persuaded that placing the responsibility on a trial judge to impose the sentence in a capital case is so fundamentally at odds with contemporary standards of fairness and decency that Florida must be required to alter its scheme and give final authority to the jury to make the life-or-death decision.
Our determination that there is no constitutional imperative that a jury have the responsibility of deciding whether the death penalty should be imposed also disposes of petitioner's double jeopardy challenge to the jury-override procedure. If a judge may be vested with sole responsibility for imposing the penalty, then there is nothing constitutionally wrong with the judge's exercising that responsibility after receiving the advice of the jury. The advice does not become a judgment simply because it comes from the jury.
Spaziano, 468 U.S. at 464-65, 104 S.Ct. 3154 (citations omitted). It is extraordinarily clear to me that this language is inherently contrary to the essence of the determination in Ring, and further, Ring counsels that this Court cannot allow a sentencing judicial officer to find aggravating factors contrary to the specific findings of a jury on those aggravating factors and override jury recommendations of life imprisonment.
*727 Prior to examining the text of the Ring decision and its intended effects, it is important to note that in analyzing the issues before this Court today, the Supreme Court wisely stated that "[t]he dispositive question ... is one not of form, but of effect." Ring, 536 U.S. at ___, 122 S.Ct. at 2439 (quoting Apprendi v. New Jersey, 530 U.S. 466, 494, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)) (internal quotation marks omitted). Thus, our high Court's conclusions in Ring should be viewed through a prism which casts its primary focus upon the actual procedures mandated by the decision. Essentially, this Court cannot focus upon what the U.S. Supreme Court did not say, but must center upon the practical effects of the Ring Court's actual determination. In my view, the absence of a discussion in Ring of Florida's procedures cannot be relied on as solid evidence that the decision has virtually no effect in Florida, a conclusion with which I cannot concur.
The fundamental and stated conclusion of Ring v. Arizona is that a "sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty." Ring, 536 U.S. at ___, 122 S.Ct. at 2443. This is so because under the Court's decision in Apprendi, "[a] defendant may not be exposed to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." Id. at 2439-40 (quoting Apprendi, 530 U.S. at 483, 120 S.Ct. 2348 (Scalia, J., concurring)) (internal punctuation marks omitted). Obviously, under Apprendi and Ring, a trial judge may not independently find aggravating facts without which the death penalty could not be imposed and, logically, may not make independent findings of aggravating factors directly contrary to the findings of a jury in an attempt to impose a sentence of death.
The Spaziano decision was premised upon an unstated presumption that jury involvement is not required in the sentencing proceedings of capital cases. Indeed, the Court made this clear on two occasions in particular within the opinion in the statements that
a capital sentencing proceeding involves the same fundamental issue involved in any other sentencing proceedinga determination of the appropriate punishment to be imposed on an individual. The Sixth Amendment never has been thought to guarantee a right to a jury determination of that issue.

. . . .
... If a judge may be vested with sole responsibility for imposing the penalty, then there is nothing constitutionally wrong with the judge's exercising that responsibility after receiving the advice of the jury.
Spaziano, 468 U.S. at 459, 465, 104 S.Ct. 3154 (emphasis supplied). However, the Ring decision now reveals that a judge may no longer "be vested with sole responsibility for imposing the [death] penalty." Id. at 465, 104 S.Ct. 3154. In a similar manner, Ring appears to now clearly stand for the proposition that the Sixth Amendment does guarantee a capital defendant the right to have a jury determine the aggravating circumstance or circumstances upon which his or her death penalty may eventually rest. See Ring, 536 U.S. at ___, 122 S.Ct. at 2443.
If Apprendi and Ring support the proposition that it is unconstitutional for a trial judge to independently find fact with regard to aggravators and impose a sentence of death without jury involvement, surely the Supreme Court's Spaziano decision authorizing a trial judge's complete disregard for a sentencing jury's recommendation based upon jury findings of aggravating factors cannot now stand. I cannot *728 avoid the conclusion that if Ring mandates penalty phase jury findings for the imposition of capital sentences, a trial judge may not simply dismiss the jury's recommendation based upon these findings and do precisely what Ring prohibits. A trial court simply cannot sentence a defendant to death through findings of fact rendered completely without, and in the case of a jury override, directly contrary to, a jury's advice and input. As has been noted by this Court in the past, a "jury's life recommendation changes the analytical dynamic," Keen, 775 So.2d at 285, and under Ring, this life recommendation must be respected. Thus, this is not only an asserted irreconcilable conflict, in my view it is a conflict we should acknowledge.
Because the Supreme Court's pronouncements in Ring are protective and prophylactic in nature, my conclusion that Ring prohibits a trial court from overriding a jury sentence of life imprisonment and imposition of the death penalty would not, however, foreclose the reversethe scenario in which a trial court overrides a jury's recommendation of death to impose life imprisonment. Just as this Court reviews the circumstances surrounding every defendant sentenced to death in Florida to ensure consistent application of the death penalty, see, e.g., Ocha v. State, 826 So.2d 956, 965 (Fla.2002); Tillman v. State, 591 So.2d 167, 169 (Fla.1992), circuit judges should be permitted to perform the same function at the trial level. Indeed, the United States Supreme Court has stated:
It would appear that judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases. Proffitt v. Florida, 428 U.S. 242, 252, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Because Ring would only impact an upward departure from the findings and recommendations of the jury, see Ring, 536 U.S. at ___, 122 S.Ct. at 2439 ("If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact ... must be found by a jury.") (emphasis supplied); Apprendi, 530 U.S. at 482-83, 120 S.Ct. 2348 (same), adjustment by a trial court of a defendant's sentence downward to life imprisonment is within constitutional parameters, proper, and in particular situations entirely warranted.
While I must concede that in concept, this State's death penalty statute has many similarities to the Arizona statute found unconstitutional in Ring, I write separately to underscore the existence of several distinctions. In this State, we have held the maximum statutory penalty for a capital felony to be death. An individual is eligible for the maximum penalty immediately upon being found guilty of a capital felony. This conclusion is supported by the text of Florida's death penalty statute and the weight of our jurisprudence interpreting this statutory scheme.
In construing Florida's death penalty statute as it appeared in 1979, this Court in Mills v. Moore, 786 So.2d 532 (Fla. 2001), concluded that the "maximum penalty available for a person convicted of a capital felony is death." Id. at 538. The relevant statutory provision from that time provided:
A person who has been convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than 25 years before becoming eligible for parole unless the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in finding by the court *729 that such person shall be punished by death, and in the latter event such person shall be punished by death.
§ 775.082(1), Fla. Stat. (1979). This Court reasoned in Mills that because the provision described the punishment for "capital felonies" and because "capital" crimes are by definition punishable by death, the "maximum possible penalty described in the capital sentencing scheme is clearly death." Mills, 786 So.2d at 538.
Although the U.S. Supreme Court's decision in Ring clearly invalidates one aspect of our holding in Mills, that Apprendi would have no application here, and, in fact, applies Apprendi to capital sentencing schemes, I believe that this Court's conclusion that death is the maximum penalty for a capital felony remains the proper analysis and result. To the extent there is skepticism regarding the continued viability of any aspect of Mills, or of the reasoning employed by Mills in the first instance, post-1979 amendments to the death penalty statute make clear the Florida Legislature's intent to make death the maximum penalty for a capital felony. In 1994, the Florida legislature amended section 775.082 of the Florida Statutes to provide that "[a] person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence... results in findings by the court that such person shall be punished by death." Ch. 94-228, § 1, Laws of Fla. (emphasis supplied).
As evidenced by the clear statutory language, Florida's death penalty statute can be distinguished from the parallel Arizona law. Where Arizona's statute ascribes punishment for "first-degree murder," Florida's ascribes punishment for "capital felonies." Compare Ariz.Rev.Stat. Ann. § 13-1105(C) with § 775.082(1), Fla. Stat. (2001). As the U.S. Supreme Court concluded in Ring, "[b]ased solely on the jury's verdict finding Ring guilty of first-degree felony murder, the maximum punishment he could have received was life imprisonment." Ring, 536 U.S. at ___, 122 S.Ct. at 2437. In contrast, a guilty verdict in a capital felony case in Florida automatically renders an individual eligible for the death penalty. The sole purpose of the subsequent penalty phase is to find and weigh aggravating and mitigating factors to determine whether the statutory maximum should be applied. See Proffitt, 428 U.S. at 248, 96 S.Ct. 2960 (describing the mechanics of Florida's sentencing scheme and stating that juries are directed to consider "`[w]hether sufficient mitigating circumstances exist ... which outweigh the aggravating circumstances found to exist; and ... [b]ased on these considerations, whether the defendant should be sentenced to life [imprisonment] or death'") (quoting § 921.141(2)(b)-(c), Fla. Stat. (1977)). Given the operation of Florida's statutory scheme, aggravating factors should not be considered elements, nor, I conclude, are they the functional equivalent of elements of a greater offense such that Ring would require that they be found unanimously by a jury. See Hildwin, 490 U.S. at 640-41, 109 S.Ct. 2055 (stating that the existence of an aggravating factor does not constitute an element of the offense under Florida's criminal statute, but is a sentencing factor triggered upon a finding of guilt). I do recognize that if it is determined that the aggravating factors under Florida's statutory scheme must be considered elements of the crime, a determination that is certainly not inconsistent with many aspects of Ring, the analysis dramatically changes.
In my view, numerous decisions of this Court and the United States Supreme Court support the conclusion that death is the maximum penalty for a capital murder in the State of Florida. These decisions *730 were neither expressly, nor implicitly, overruled by Ring. I believe this constitutes an important distinction between Florida's death penalty statute and the statute in Arizona. Furthermore, the majority opinion's silence on the matter may needlessly raise questions regarding the viability of Florida's death penalty statute. For these reasons, I can only concur in the majority's judgment. I recognize that one may conclude that if death is the maximum authorized punishment upon a finding of guilt under the Florida scheme, Ring would have little, if any, impact on the Florida capital punishment statutory provisions. However, while I conclude that death may be the maximum penalty upon a finding of guilt, I cannot envision that the foundation of Ring has no depth of application to reach jury findings with regard to aggravating factors under Florida law upon which the imposition of a death penalty is totally dependent.
Additionally, although not specifically addressed in the majority opinion, I write to express my view on one aspect of the Florida death sentencing scheme that appears to remain valid even after the Supreme Court's decision in Ring v. Arizona. Expression of the continued constitutionality of this aspect is necessary to provide guidance to the trial courts, which are faced with the task of administering death penalty cases in the wake of Ring. To that end, it should be clarified that the decision in Ring does not appear to have had an impact on the Supreme Court's holding in Hildwin v. Florida. In Hildwin, the issue before the Court was "whether the Sixth Amendment requires a jury to specify the aggravating factors that permit the imposition of capital punishment in Florida." Hildwin, 490 U.S. at 638, 109 S.Ct. 2055. There, the Court ruled "the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury." Id. at 640-41, 109 S.Ct. 2055. I find nothing, explicitly or inherently, within the Supreme Court's decision in Ring to suggest that this holding of Hildwin has been rendered invalid.
Notably, the high Court's opinion in Ring clearly reflects that the petitioner presented a very narrow claim, specifically whether the Sixth Amendment required jury findings on aggravating circumstances. See Ring, 536 U.S. at ___ n. 4, 122 S.Ct. at 2437 n. 4. The petitioner in Ring did not argue that the Sixth Amendment requires that the jury make the final determination of whether the death penalty should be imposed. See id. In Proffitt v. Florida, the U.S. Supreme Court upheld Florida's death penalty scheme and stated: "The jury's verdict is determined by majority vote. It is only advisory; the actual sentence is determined by the trial judge." 428 U.S. at 248-49, 96 S.Ct. 2960. I conclude that the holding in Proffitt was not under challenge in Ring, and, therefore, the majority has correctly reasoned that Proffitt is still valid in operation. As Proffitt is still viable, and the final sentence in Florida is determined by the trial court, it follows that once the jury advises the judge that certain aggravating factors have been found, it is only the judge who must then make specific written findings.
The holding in Ring was clearly very narrow. The Court wrote: "Because Arizona's enumerated aggravating factors operate as `the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." Ring, 536 U.S. at ___, 122 S.Ct. at 2443 (citation omitted). The Court did not expand on this holding; indeed, the Court did not require the aggravating factors be enumerated by the jury on a special verdict form, nor did the Court provide any guidance as to how the jury must determine the existence of the *731 aggravating factors. Therefore, in my view, there is nothing to suggest that Hildwin is no longer operative and binding law. Florida's sentencing scheme remains constitutional; the jury is not required to make specific findings authorizing the imposition of the death penalty.
Finally, I write separately to express my view that in light of the dictates of Ring v. Arizona, it necessarily follows that Florida's standard penalty phase jury instructions may no longer be valid and are certainly subject to further analysis under the United States Supreme Court's Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), holding. In Caldwell, the Supreme Court concluded "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." Id. at 328-29, 105 S.Ct. 2633. There, the Court deemed prosecutorial statements to a jury[66] unconstitutional because the State "sought to minimize the jury's sense of responsibility for determining the appropriateness of death." Id. at 341, 105 S.Ct. 2633. Following the decision in Caldwell, this Court evaluated the constitutionality of Florida's standard jury instructions. See Combs v. State, 525 So.2d 853 (Fla.1988) (rejecting the petitioner's argument that the standard jury instruction was unconstitutional); see also Cook v. State, 792 So.2d 1197, 1201 (Fla. 2001) (same).
Florida's standard penalty phase jury instructions provide in relevant part:
Ladies and gentlemen of the jury, you have found the defendant guilty of Murder in the First Degree.
The punishment for this crime is either death or life imprisonment without the possibility of parole. Final decision as to what punishment shall be imposed rests solely with the judge of this court; however, the law requires that you, the jury, render to the court an advisory sentence as to what punishment should be imposed upon the defendant.
. . . .
Ladies and gentlemen of the jury, it is now your duty to advise the court as to what punishment should be imposed upon the defendant for [his][her] crime of Murder in the First Degree. As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the judge; however, it is your duty to follow the law that will now be given you by the court and render to the court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.
Your advisory sentences should be based upon the evidence [that you have heard while trying the guilt or innocence of the defendant and evidence that has been presented to you in these proceedings] [that has been presented to you in these proceedings].
. . . .

*732 If you find the aggravating circumstances do not justify the death penalty, your advisory sentence should be one of life imprisonment without possibility of parole.
Should you find sufficient aggravating circumstances do exist, it will then be your duty to determine whether mitigating circumstances exist that outweigh the aggravating circumstances....
Each aggravating circumstance must be established beyond a reasonable doubt before it may be considered by you in arriving at your decision.
. . . .
If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.
A mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established.
The sentence that you recommend to the court must be based upon the facts as you find them from the evidence and the law. You should weigh the aggravating circumstances against the mitigating circumstances, and your advisory sentence must be based on these considerations.
In these proceedings it is not necessary that the advisory sentence of the jury be unanimous.
The fact that the determination of whether you recommend a sentence of death or sentence of life imprisonment in this case can be reached by a single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings. Before you ballot you should carefully weigh, sift and consider the evidence, and all of it, realizing that human life is at stake, and bring to bear your best judgment in reaching your advisory sentence.
If a majority of the jury determine that (defendant) should be sentenced to death, your advisory sentence will be: "A majority of the jury, by a vote of ______, advise and recommend to the court that it impose the death penalty upon (defendant)."
On the other hand, if by six or more votes the jury determines that (defendant) should not be sentenced to death, your advisory sentence will be: "The jury advises and recommends to the court that it impose a sentence of life imprisonment upon (defendant) without possibility of parole."
You will now retire to consider your recommendation. When you have reached an advisory sentence in conformity with these instructions, that form of recommendation should be signed by your foreman and returned to the court.
Fla. Std. Jury Instr. (Crim.) 7.11.[67]
I recognize that this Court has held that Florida's standard jury instructions are constitutional under Caldwell. See Combs, 525 So.2d 853. However, in light of the decision in Ring v. Arizona, it is necessary to reevaluate both the validity, and, if valid, the wording of these jury instructions. The United States Supreme Court has defined the reach of Caldwell by stating that "Caldwell is relevant only to certain types *733 of commentthose that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." Darden v. Wainwright, 477 U.S. 168, 183 n. 15, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). In Ring, the high Court made the jury's role in capital sentencing absolutely clearthe jury must find the aggravating factors. See Ring, 536 U.S. at ___, 122 S.Ct. at 2443. As the Court in Ring stated, "[T]he right to trial by jury ... would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death." Id. Clearly, under Ring, the jury plays a vital role in the determination of a capital defendant's sentence through the determination of aggravating factors. However, under Florida's standard penalty phase jury instructions, the role of the jury is minimized, rather than emphasized, as is the necessary implication to be drawn from Ring.
Under Florida's standard penalty phase jury instructions, the jury is told, even before evidence is presented in the penalty phase, that its sentence is only advisory and the judge is the final decisionmaker. See Fla. Std. Jury Instr. (Crim.) 7.11. The words "advise" and "advisory" are used more than ten times in the instructions, while the members of the jury are only told once that they must find the aggravating factors beyond a reasonable doubt. See id. The jury is also instructed several times that its sentence is simply a recommendation. See id. By highlighting the jury's advisory role, and minimizing its duty under Ring to find the aggravating factors, Florida's standard penalty phase jury instructions must certainly be reevaluated under the Supreme Court's Caldwell v. Mississippi decision.
Just as the high Court stated in Caldwell, Florida's standard jury instructions "minimize the jury's sense of responsibility for determining the appropriateness of death." Caldwell, 472 U.S. at 341, 105 S.Ct. 2633. Ring clearly requires that the jury play a vital role in determining the factors upon which the sentencing will depend, and Florida's jury instructions tend to diminish that role and could lead the jury members to believe they are less responsible for a death sentence than they actually are. Ring has now emphasized the jury's role in this process and may compel Florida's standard penalty phase jury instructions to do the same.
While not explicitly asserted by Bottoson, the issue of the validity of the jury instructions given in his case should be addressed in light of his facial attack upon Florida's death penalty scheme on the basis of the holding in Ring v. Arizona. During Bottoson's penalty phase, the judge gave the standard penalty phase jury instructions. Further, during the voir dire of the jury, the judge explained Florida's death penalty sentencing scheme to the panel. In so doing, the judge remarked:
At that [penalty] phase, the jury makes a recommendation to the Judge as to sentence, death or life.... The third phase is where I make the judgment; the call; I make the decision as to what sentence will be imposed.... The jury's recommendation is only one of the fourteen factors and I insist that we use the term recommendation because that is all that it is. It is the jury's recommendation to me, which I can accept, if I choose, or reject, if I choose.... Now, I'm not trying to demean the contribution that the jury makes, but on the other hand, I don't want to blow this out of proportion. You are not imposing the death sentence, nor are you sitting in judgment on your fellow man.
*734 These additional comments made to the voir dire panel, along with the standard jury instructions given during the penalty phase, draw into issue the proscriptions of Caldwell, as now impacted by the requirements of Ring. In Caldwell, the Court reversed because, as the Court wrote:
[T]he State sought to minimize the jury's sense of responsibility for determining the appropriateness of death. Because we cannot say that this effort had no effect on the sentencing decision, that decision does not meet the standard of reliability that the Eighth Amendment requires. The sentence of death must therefore be vacated.
472 U.S. at 341, 105 S.Ct. 2633. In this case, there was a tendency to minimize the role of the jury, not only in the standard jury instructions, but also in the trial court's added explanation of Florida's death penalty scheme. I question whether a jury in situations such as this can have the proper sense of responsibility with regard to finding aggravating factors or the true importance of such findings as now emphasized by Ring. In my view, although the standard jury instructions may not be flawed to the extent that they are invalid or require a reversal in this case, such instructions should now receive a detailed review and analysis to reflect the factors which inherently flow from Ring.
Based upon the foregoing, although I concur in the result, I cannot concur in the silent reasoning provided by the majority as a basis for its conclusions. As detailed above, I am gravely concerned regarding the constitutionality of jury overrides under Ring and I cannot silently afford blind adherence to authorities which are now in apparent irreconcilable conflict with Ring. Additionally, I also conclude that Florida's standard jury instructions need immediate attention. In my view, there are more than mere contentions of conflict, which the majority is willing to acknowledge, there are facially irreconcilable conflicts which the majority does not acknowledge.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(9), Fla. Const.
[2] See Bottoson v. Florida, 534 U.S. 1121, 122 S.Ct. 981, 151 L.Ed.2d 962 (2002).
[3] See Bottoson v. Florida, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 844 (2002).
[4] See, e.g., Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
[5] In order to be complete, I believe it should be noted that certiorari was denied by the United States Supreme Court in most of the cases cited in Chief Justice Anstead's specially concurring opinion. See, e.g., Jones v. State, 569 So.2d 1234 (Fla.1990), cert. denied, 510 U.S. 836, 114 S.Ct. 112, 126 L.Ed.2d 78 (1993); Davis v. State, 703 So.2d 1055 (Fla. 1997), cert. denied, 524 U.S. 930, 118 S.Ct. 2327, 141 L.Ed.2d 701 (1998); Sims v. State, 681 So.2d 1112 (Fla.1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984), appeal after remand, 510 So.2d 881 (Fla.1987), cert. denied, 485 U.S. 924, 108 S.Ct. 1094, 99 L.Ed.2d 256 (1988).
[6] Implicit in the opinion of Chief Justice Anstead and express in the opinions of Justice Pariente is the assumption that death is not the maximum penalty for a conviction of a capital felony in Florida. This Court, however, expressly held otherwise in Mills v. Moore, 786 So.2d 532, 538 (Fla.) ("[T]here can be no doubt that a person convicted of a capital felony faces a maximum possible penalty of death."), cert. denied, 532 U.S. 1015, 121 S.Ct. 1752, 149 L.Ed.2d 673 (2001).
[7] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[8] The Apprendi issue had also been raised in other Florida capital cases that were stayed by the United States Supreme Court pending decisions on certiorari. In all of those cases, the Court denied certiorari and terminated the stays after the Court issued its decision in Ring v. Arizona. See Looney v. State, 803 So.2d 656, 675 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2678, 153 L.Ed.2d 850 (2002) (direct appeal decision); Hertz v. State, 803 So.2d 629, 648 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2673, 153 L.Ed.2d 846 (2002) (direct appeal decision); Card v. State, 803 So.2d 613, 628 n. 13 (Fla. 2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2673, 153 L.Ed.2d 845 (2002) (direct appeal decision); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2669, 153 L.Ed.2d 843 (2002) (denial of petition for writ of habeas corpus).
[9] See, e.g., Lambrix v. Singletary, 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989); Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
[10] The maximum sentences so provided are: for a capital felony, death; for a life felony, a term of imprisonment for life; for a first-degree felony, a term of imprisonment not exceeding thirty years; for a second-degree felony, a term of imprisonment not exceeding fifteen years; and for a third-degree felony, a term of imprisonment not exceeding five years.
[11] See, e.g., Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) (finding that conviction of a capital offense narrows the class of cases eligible for the death penalty); McMillan v. Pennsylvania, 477 U.S. 79, 87-88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (explaining that in mandatory minimum for possession of a firearm the finding of visible possession of a firearm "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it").
[12] Apprendi involved enhancement of a crime under the New Jersey hate crime statute.
[13] In many instances the sentence of death could in fact be imposed based on the jury verdict because contemporaneous with the finding of first-degree murder the jury may have also found another felony, may have found that the murder was committed for pecuniary gain, i.e., a robbery, etc.
[14] See Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (explaining that the Florida jury in an important respect is a cosentencer because the weighing process is divided between the jury and the trial judge).
[15] There has been renewed focus on the rule of law since the events of September 11, 2001. Notably, the President has emphasized the fundamental importance of independent courts and the rule of law as an essential safeguard to prevent lawlessness and terrorism. In the context of our decision today, the rule of law means that we accept the holding of the U.S. Supreme Court in Ring and apply its analysis as best we can to Florida's death penalty scheme.
[16] In Ring, the Supreme Court noted its decision in Hildwin in discussing Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the decision which was expressly overruled in Ring:

The Court had previously denied a Sixth Amendment challenge to Florida's capital sentencing system, in which the jury recommends a sentence but makes no explicit findings on aggravating circumstances; we so ruled, Walton noted, on the ground that `the Sixth Amendment does not require that the specific findings authorizing the imposition of death be made by the jury.' [Walton, 497 U.S.] at 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (quoting Hildwin v. Florida, 490 U.S. 638, 640-641, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) (per curiam)).
Ring, 536 U.S. at ___, 122 S.Ct. at 2437 (2002). Despite this characterization of Florida's system and the Court's recognition that Walton's reasoning sprung from Hildwin, the Court overruled Walton, but did not specifically recede from or overrule Hildwin or any of the court's previous opinions approving of Florida's capital sentencing system.
[17] My colleagues have relied on a number of different reasons for denying relief to Bottoson. To be sure, there is another factor important to my decision to concur in denying relief, and that is that the U.S. Supreme Court has specifically denied Bottoson's petition for review and has lifted the stay it previously granted as to his execution. In other words, the same court that decided Ring has refused to consider Bottoson's claim of a similar Sixth Amendment violation. Whether this denial was based on a procedural bar, a lack of retroactive effect, or some other reason, is impossible to know. But the immediate effect of the Supreme Court's action is to clear the way for Bottoson's execution to go forward.
[18] I concur in Justice Pariente's discussion and analysis of this issue.
[19] Further support for viewing Florida's capital sentencing scheme as flawed is contained in the separate Ring opinions of Justice Scalia and Justice O'Connor. Justice O'Connor, who dissented from the Ring majority, recognized that the decision would cause a new round of challenges to Florida's capital sentencing scheme. See Ring, 536 U.S. at ___, 122 S.Ct. at 2450 (O'Connor, J., dissenting) (expressing fear "that the prisoners on death row in Alabama, Delaware, Florida, and Indiana, which the Court identifies as having hybrid sentencing schemes in which the jury renders an advisory verdict but the judge makes the ultimate sentencing determination may also seize on today's decision to challenge their sentences").

Justice Scalia explained that Apprendi and Ring are based on the proposition that aggravating circumstances are similar to elements of a crime and must be established with the same due process:
I believe that the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receiveswhether the statute calls them elements of the offense, sentencing factors, or Mary Janemust be found by the jury beyond a reasonable doubt.
Ring, 536 U.S. at ___, 122 S.Ct. at 2444 (Scalia, J., concurring). Justice Scalia went on to state:
[M]y observing over the past 12 years the accelerating propensity of both state and federal legislatures to adopt "sentencing factors" determined by judges that increase punishment beyond what is authorized by the jury's verdict, and my witnessing the belief of a near majority of my colleagues that this novel practice is perfectly OK, cause me to believe that our people's traditional belief in the right of trial by jury is in perilous decline. That decline is bound to be confirmed, and indeed accelerated, by the repeated spectacle of a man's going to his death because a judge found that an aggravating factor existed. We cannot preserve our veneration for the protection of the jury in criminal cases if we render ourselves callous to the need for that protection by regularly imposing the death penalty without it.
Accordingly, whether or not the States have been erroneously coerced into the adoption of "aggravating factors," wherever those factors exist they must be subject to the usual requirements of the common law, and to the requirement enshrined in our Constitution, in criminal cases: they must be found by the jury beyond a reasonable doubt.
... What today's decision says is that the jury must find the existence of the fact that an aggravating factor existed. Those States that leave the ultimate life-or-death decision to the judge may continue to do soby requiring a prior jury finding of aggravating factor in the sentencing phase or, more simply, by placing the aggravating-factor determination (where it logically belongs anyway) in the guilt phase.
Id. at 2445 (citation omitted) (first emphasis supplied). Justice Scalia's opinion makes clear that under the Sixth Amendment the responsibility of the jury to find an aggravating circumstance is the same as that undertaken by the jury in finding elements of a crime during the guilt phase of the trial. If this analysis is correct, a jury would have to unanimously find as a matter of fact that an aggravating circumstance existed beyond a reasonable doubt before that circumstance could be invoked to justify a death sentence. Hence, a non-binding and non-unanimous advisory recommendation such as is provided in Florida would hardly do to meet the requirements of the Sixth Amendment as interpreted in Ring and Apprendi.
[20] Under our case law, if this Court were to receive a hypothetical case on review in which the jury had given its advisory recommendation of the death sentence, but the judge had not made the requisite findings of fact with regard to the aggravating and mitigating factors, this Court could not rely on the jury's advice alone to decide that the facts necessary to impose the death sentence had been found. If the trial judge had not complied with the statute's requirements and prepared written, specific findings of fact with regard to the aggravating circumstances, this Court would either require the court to supplement the record with the specific findings that are required, see, e.g., Cave v. State, 445 So.2d 341 (Fla.1984), or possibly, depending on the facts of the case, we would vacate the sentence and remand for the imposition of a life sentence. See, e.g., Van Royal v. State, 497 So.2d 625, 628 (Fla.1986); see also Christopher v. State, 583 So.2d 642, 646 (Fla.1991) (explaining that a trial court's failure to provide timely written findings in a sentencing proceeding could compel remand for imposition of a life sentence and that our holding in this respect "is more than a mere technicality" because "[t]he statute itself requires the imposition of a life sentence if the written findings are not made").
[21] Significantly, Florida law currently requires a number of sentence enhancing "elements" or "aggravating circumstances" for other noncapital offenses to be submitted to the jury, found beyond a reasonable doubt by a unanimous jury, and reflected in the jury's verdict. These are the type of sentence enhancing elements that increase a defendant's sentence for a term of years. For example, Florida's burglary statute increases the punishment imposed on a defendant if certain aggravating circumstances are present. See § 810.02, Fla. Stat. (2001). If the jury finds that the state has proved a particular aggravating circumstance beyond a reasonable doubt, they are required to find the defendant guilty of the enhanced crime, such as "burglary with an assault," "burglary while armed," "burglary of a dwelling," or "burglary of a structure with a human being in the structure." See Fla. Std. Jury Instr. (Crim.) 13:1. When no aggravating circumstances are found, the jury should find the defendant guilty only of burglary. See id. Thus, it is possible to tell from the jury's verdict which aggravators were factually found, because the verdict will reflect the aggravating circumstances through the crime that jury finds established. We have extended this reasoning to other crimes involving drugs, guns, etc. Thus, in Florida, we have long held that defendants charged with lesser crimes should receive the benefit of the increased Sixth Amendment protection as provided in Apprendi.
[22] For example, Justice Quince has posited a possible distinction the Supreme Court could rely on in her separate concurring opinion.
[23] See generally Ring v. Arizona, 536 U.S. 584, ___ _ ___, 122 S.Ct. 2428, 2449-50, 153 L.Ed.2d 556 (2002) ("I believe many of these challenges will ultimately be unsuccessful ... because, having completed their direct appeals, they will be barred from taking advantage of today's holding on federal collateral review. See ... Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).") (O'Connor, J., dissenting).
[24] See generally Witt v. State, 387 So.2d 922 (Fla.1980).
[25] The jury's recommendation to the sentencing judge, on the other hand, does not enjoy the same status as an element of the offense and requires only a majority vote. See Alvord v. State, 322 So.2d 533 (Fla.1975) (upholding the requirement that a jury's advisory sentence need only be rendered by majority vote, not unanimously). See also § 921.141(3), Fla. Stat. (2001).
[26] The court found that the murder was committed for pecuniary gain and in an "especially heinous, cruel or depraved" manner. See Ring, 536 U.S. at ___, 122 S.Ct. at 2435.
[27] The court found that Ring had a minimal criminal record. See id.
[28] The court struck the "depraved" circumstance. See id. at 2436.
[29] See § 782.04, Fla. Stat. (2001).
[30] The current penalty statute reads as follows:

775.082 Penalties; applicability of sentencing structures; mandatory minimum sentences for certain reoffenders previously released from prison.
(1) A person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and shall be ineligible for parole.
§ 775.082, Fla. Stat. (2001).
[31] See § 921.141(1), Fla. Stat. (2001).
[32] See Fla. Std. Jury Instr. (Crim.) 7.11.
[33] See § 921.141(2), Fla. Stat. (2001).
[34] See, e.g., Tedder v. State, 322 So.2d 908, 910 (Fla.1975) ("A jury recommendation under our trifurcated death penalty statute should be given great weight.").
[35] See § 921.141(3), Fla. Stat. (2001).
[36] See id.
[37] See § 921.141(4), Fla. Stat. (2001).
[38] See Ramirez v. State, 810 So.2d 836, 843 (Fla.2001) ("[T]he State must prove each element of the charged offense beyond a reasonable doubt.").
[39] See Fla. R.Crim. P. 3.440; Fla. Std. Jury Instr. (Crim.) 3.10.
[40] See Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (holding that the Sixth Amendment's right to trial by jury was not violated by eleven-to-one and ten-to-two guilty verdicts in state noncapital cases).
[41] See Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (holding that the Due Process Clause of the Fourteenth Amendment was not violated by a nine-to-three guilty verdict in a state noncapital case).
[42] See Motion to Call Circuit Judge to Bench, 8 Fla. 459, 482 (1859) ("The common law wisely requires the verdict of a petit jury to be unanimous.").
[43] Section 775.01, Florida Statutes (2001), which dates back to November 6, 1829, provides as follows:

775.01 Common law of England.The common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, shall be of full force in this state where there is no existing provision by statute on the subject.
§ 775.01, Fla. Stat. (2001).
[44] See, e.g., Jones v. State, 92 So.2d 261, 261 (Fla.1956) ("In this state, the verdict of the jury must be unanimous."); Patrick v. Young, 18 Fla. 50, 50 (Fla.1881) ("The record of a verdict implies a unanimous consent of the jury, and is conclusive evidence of that fact.").
[45] See Fla. R.Crim. P. 3.440 ("No verdict may be rendered unless all the trial jurors concur in it.").
[46] See Fla. Std. Jury Instr. (Crim.) 3.10 ("Whatever verdict you render must be unanimous, that is, each juror must agree to the same verdict.").
[47] This holding in Ring appears to conflict with the following language in Hildwin v. Florida, 490 U.S. 638, 640, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989): "[T]he existence of an aggravating factor here is not an element of the offense but instead is `a sentencing factor that comes into play only after the defendant has been found guilty.'" I assume, however, that the United States Supreme Court was aware of this language in Hildwin and intended to supersede it.
[48] See Fla. Std. Jury Instr. (Crim.) 7.11 ("If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.").
[49] Ring also comports with the threefold test of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967):(a) the purpose of Ring is of paramount importance, i.e., it is to safeguard the protections guaranteed by the right to trial by jury; (b) the extent of reliance on the current sentencing scheme has been limited to a relatively small subgroup of all criminal cases, i.e., only those capital cases wherein death was imposed; and (c) the effect on the administration of justice of retroactive application of Ring would be no greater than that of any other capital sentencing decision that this Court has applied retroactively in the past.
[50] See, e.g., James v. State, 615 So.2d 668 (Fla.1993) (applying retroactively Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), wherein Florida's jury instruction on the "heinous, atrocious, or cruel" aggravating circumstance was held to be impermissibly vague under the Eighth Amendment); Jackson v. Dugger, 547 So.2d 1197 (Fla.1989) (applying retroactively Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), wherein the use of victim impact evidence in a capital trial was held to be irrelevant and impermissibly inflammatory in violation of the Eighth Amendment; the United States Supreme Court later receded from Booth in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)); Thompson v. Dugger, 515 So.2d 173 (Fla.1987) (applying retroactively Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), wherein Florida's jury instructions in capital cases were held to impermissibly limit the sentencer's consideration of nonstatutory mitigating circumstances in violation of the Eighth Amendment).
[51] See State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001).
[52] See Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[53] Further, this Court, in applying Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), retroactively in final cases, did not require that Hitchcock claims be raised at trial in order to be reviewed on postconviction motion. See, e.g., Teffeteller v. Dugger, 734 So.2d 1009, 1025 (Fla.1999) ("Further, Hitchcock constituted a substantial change in the law so that such error could be raised for the first time in a postconviction proceeding even if otherwise procedurally barred.")
[54] See Ring, 122 S.Ct. at 2440-43.
[55] This Court on direct appeal summarized the aggravating circumstances that had been established as follows:

As aggravating circumstances, the trial judge found that appellant had previously been convicted of a crime involving the threat of violence; that the crime was committed during the commission of a felony; that it was committed for the purpose of avoiding arrest; and that it was especially heinous, atrocious, or cruel.
Bottoson v. State, 443 So.2d 962, 966 (1983).
[56] See Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.
[57] I explain in more detail in my separate concurrence in King v. Moore, 831 So.2d 143 (Fla.2002), my analysis of the United States Supreme Court precedent.
[58] The five steps discussed in Dixon are (1) a post-conviction hearing before a jury, (2) a jury recommendation, (3) determination of the sentence by the judge, (4) written findings in support of a death sentence, and (5) review by this Court. See 283 So.2d at 7-8.
[59] In Mills, this Court relied on dictionary definitions of the word "capital" in reasoning that Apprendi was inapplicable to capital sentencing. See Mills, 786 So.2d at 538.
[60] Noteworthy is the fact that section 794.011(1)(h), Florida Statutes (2001), defines sexual battery by a person 18 years of age or older on a child under 12 years of age as "capital sexual battery." See Gibson v. State, 721 So.2d 363, 367 (Fla. 2d DCA 1998). However, in Buford v. State, 403 So.2d 943, 951 (Fla.1981), this Court banned the death penalty for the crime of "capital sexual battery." As Buford demonstrates, simply because a crime is labeled "capital" in Florida does not automatically render it punishable by death. It is incumbent on this Court to look beyond a statutory label in order to ascertain what punishment is actually authorized for the offense.
[61] In a decision applying Apprendi and Ring to its sentencing laws, the Indiana Supreme Court vacated three sentences of life without parole imposed on a defendant, finding that the sentences "were based on facts extending the sentence beyond the statutory maximum authorized by the jury's verdict finding [the defendant] guilty of first-degree murder." Bostick v. State, 773 N.E.2d 266, 273 (Ind. 2002). Indiana law requires unanimity for a jury recommendation of an enhanced sentence. In Bostick, the jury could not agree on a sentence recommendation. The Indiana Supreme Court concluded that without a jury recommendation based on the finding of at least one aggravating circumstance, the trial court could not impose the enhanced sentence, consistent with Apprendi and Ring. Id.
[62] It should be noted that the majority in Apprendi declined to overrule Almendarez-Torres but did appear to express concerns about the continued viability of that decision:

Even though it is arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset.
Id. at 489-90, 120 S.Ct. 2348.
[63] Based on the views I have expressed, I believe the finding as to the aggravators should be unanimous. This requirement would be consistent with Ring and not inconsistent with our present statute, which only refers to a majority vote as to a life or death recommendation. See § 921.141(3).
[64] For example, in Washington v. State, 835 So.2d 1083 (Fla.2002), a case presently before this Court on postconviction appeal, the jury recommended life imprisonment. See Washington v. State, 653 So.2d 362, 366 (Fla.1995). The judge overrode the jury's life recommendation and imposed the death penalty, finding four aggravators. See id. The jury was not polled and there is presently no way to ascertain whether the jury did or did not find any aggravators beyond a reasonable doubt. Thus, on appellate review, this Court had no way to ascertain whether the trial judge improperly overrode the jury's life recommendation and imposed the death sentence based on aggravators not found by the jury.
[65] For example, in Porter v. Moore, No. SC01-2707 (Fla. June 20, 2002), a case presently before this Court on a motion for rehearing, the trial court imposed the death sentence finding four aggravators. However, this Court struck one of the aggravators on appeal. See Porter v. State, 564 So.2d 1060, 1063 (Fla.1990). Given the nonspecific death recommendation of the jury, it is impossible to tell whether any of the jurors relied on the aggravator this Court struck when recommending death. As a result, Porter's death sentence may rest on an unconstitutional element.
[66] In Caldwell, the prosecutor said:

Now, they would have you believe that you're going to kill this man and they knowthey know that your decision is not the final decision. My God, how unfair can you be? Your job is reviewable.... For they know, as I know, and as Judge Baker has told you, that the decision you render is automatically reviewable by the Supreme Court.
Caldwell, 472 U.S. at 325-26, 105 S.Ct. 2633.
[67] Although the standard jury instructions were amended in 1996, see In re Standard Jury Instructions in Criminal Cases, 678 So.2d 1224 (Fla.1996), the actual substance of the instructions has remained the same for some time.